639 So.2d 1201 (1994)
Vincent J. BRUNO, et al.
v.
The CITY OF NEW ORLEANS, et al.
No. 94-CA-0371.
Court of Appeal of Louisiana, Fourth Circuit.
June 30, 1994.
Jeffery M. Lynch, Guste, Barnett & Shushan, and Frank G. Desalvo and Dale C. Wilks, New Orleans, for plaintiffs/appellants.
*1202 Sidney M. Bach, Gerald Wasserman, Bach & Wasserman, Metairie, for defendant/appellees.
Before BARRY, BYRNES and PLOTKIN, JJ.
PLOTKIN, Judge.
This appeal arises from a class action suit seeking police overtime pay which was filed in 1977 and resolved by a November 5, 1991 trial court judgment. As a part of the judgment, the court memorialized an agreement between the parties wherein the attorneys for the police officers, Sidney Bach and Bradford Roberts, agreed to pay some of the costs incurred in calculating the overtime pay due. Those costs were to be paid out of the 20 percent contingency fee on the $10,000,000 award.
On June 4, 1993, Mr. Ronald Cannatella, in his capacity as president of the Police Association of New Orleans (PANO) and as a member of the plaintiff class, filed a Motion to Enforce Settlement Agreement, seeking recovery of $10,072 in expenses from Bach. That motion was denied by the court without written reasons; Canatella appeals.
Cannatella claims that the agreement between the police officers and the attorneys required Bach and Roberts to pay all expenses involved in computing the overtime pay awards. He claims that agreement was verified by October 1992 letters between himself and Gerald Wasserman of Bach & Wasserman.
With his motion to enforce the settlement, Cannatella submitted invoices for $20,144 in expenses paid by PANO which he claims fall under the provisions of the agreement. Those expenses are itemized as follows:

Payroll and taxes $12,702
Telephone 2,127
Postage, checks and notices 960
Copies and supplies 1,555
Rental of hotel meeting rooms 2,800
 _______
TOTAL $20,144

Roberts has paid $10,072 for one-half of the costs.
Bach claims that the expenses listed above were never approved as costs of the litigation and that he never agreed to pay them. Further, Bach contends that he agreed only to pay the costs for services of the court-approved CPA firm which was hired to compute the overtime pay.
Thus, the only issue before the trial court in this case was whether the agreement to pay the "cost of the CPA's and any other costs involved" requires Bach to pay the listed expenses. Without written reasons, the trial court found that Bach was not liable for the expenses claimed. A close reading of the transcript reveals that the court found no valid written agreement between the parties concerning payment of the disputed expenses.
We find no manifest error in this conclusion by the trial court. The record reveals that the trial court held a Fairness Hearing on November 5, 1991. The purpose of the hearing was to determine the fairness and reasonableness of the proposed structured payments to the members of the plaintiff class by the city. Thus, the Notice to Plaintiff Class of Fairness Hearing[1] included the proposed payment for attorneys' fees of 20 percent of the proceeds due; that notice also specifically mentioned the fact that a fee for *1203 accounting services would be paid out of the proceeds, leaving the amount of the fee for court approval. The publication costs for the Fairness Hearing Notice was designated as a reimbursable litigation expense.
Canatella points to portions of the transcript of the fairness hearing, which he claims support his theory that the agreement reached by the parties cover the costs in question. The trial judge remarked on page 9 of the transcript that he "was dictating [his] judgment in ruling in behalf of the agreement that was struck." Then, on pages 10 and 11 of the hearing transcript, the trial judge stated as follows:
Secondly, the attorneys will pay all expenses and costs involved herein out of their fee. There won't be any separate assessment. We had to hire some CPA's whose work perhaps was up in the air and it was agreed to that the payment of that CPA would come out of the gross amount due. That is being changed today whereby that cost of the CPA's and any other costs involved, the attorneys will pay themselves out of that twenty percent fee.
The original fee was one third and after the fireman's case was reduced to twenty percent, this court insisted that their fee be reduced from one third to twenty percent. If a police officer is going to get five thousand dollars, twenty percent will be taken off for the attorney fees.
(Emphasis added.)
On the other hand, numerous other exchanges between the attorneys and the court[2] support the trial court's conclusion that the expenses listed were not covered by the agreement. Those statements indicate that a series of discussions and other exchanges in a lengthy and complex litigation process never resulted in a definitive agreement concerning the expenses. The discussions at the hearing included, in addition to the method of calculating attorneys fees, the method of calculating past due interest, as well as the categories of officers to be included in the settlement.
Since the record contains evidence supporting the trial court judgment, we affirm. In this case, a body of compelling evidence supports the view that no agreement between the parties as to the payment of these costs existed. The judgment of the trial court denying the Motion to Enforce Settlement is affirmed.
AFFIRMED.
BARRY, J., dissents with reasons.
BARRY, Judge, dissenting with reasons.
The hearing transcript clearing supports a finding that the parties had reached an *1204 agreement on the payment of costs. The fact that there was an agreement was expressly stated by the court:
The court was dictating its judgment in ruling in behalf of the agreement that was struck and the concept of interest popped up, ... [emphasis added]
After stating that an agreement had been "struck", the trial judge stated:
Secondly, the attorneys will pay all expenses and costs involved herein out of their fee. There won't be any separate assessment. [emphasis added]
The verbal exchanges between the attorneys and the court which are quoted by the majority have no bearing whatsoever on the fact that there was an agreement between the parties and that all costs were to be paid by the attorneys out of their $2,000,000 fee. It is interesting that one attorney paid half of the total costs in question. I can't assume that payment was voluntary or gratuitous, rather it was in compliance with the agreement.
NOTES
[1] NOTICE TO PLAINTIFF CLASS OF FAIRNESS HEARING

IV. A class action 20% attorney's fee has been previously awarded by prior Order of the Court, and will be payable to counsel for the Plaintiff Class, Sidney M. Bach, Esq. and Bradford R. Roberts II, Esq. out of the proceeds due the Plaintiff Class pursuant to the Court's Judgments. The attorney's fees are to be proportionately paid at the time of the disbursements provided for under the schedule set forth in Par. I above. In addition thereto, a fee for accounting services in an amount to be submitted, and which shall be subject to the Court's approval, is also to be paid out of the proceeds due and owing under the Judgments rendered herein, to the certified public accounting firm of Spilsbury, Hamilton, Legendre & Paciera for professional accounting services undertaken at the directive of this Court...
This Class Action Notice of Fairness Hearing shall be published two (2) times in the New Orleans Times-Picayune, ... The costs for publication of such Notice shall be reimbursable to the party incurring same as reasonable expenses of litigation under Art. 595, La.C.C.P.
[2] The following excerpts are from the transcript of the Fairness Hearing conducted in Civil District Court, Parish of Orleans, on November 5, 1991.

Mr. Roberts:
... how interest is computed and so forth and it is a one remaining unresolved issue between the parties ... (See p. 6).
The Court:
... Now we have to wrestle with the interest thing. We have discuss (sic) that because I want a clear understanding of what we are talking about. (See p. 7).
The Court:
The Court was dictating its judgment in ruling in behalf of the agreement that was struck and the concept of interest popped up, which concept of interest was not discussed in our last meeting on September 26th and 27th. Therefore the agreement will include this concept on the interest... (See p. 9).
Mr. Brown:
As we have discussed in our last agreement in September, the Court has found that the use ... is in accordance with the use of those bond proceeds.
The Court:
Yes, very definitely include that in ... (See pp. 12-13).
Officer Cannatella:
The criteria that were used were: A, if they were commissioned; if they received training ... I don't want any question about that.
The Court:
I see no problem with that.
Mr. Brown:
We have discussed this many times. I have asked for this list before and it has never been forthcoming. Never having seen the list, I can't approve it sight unseen.
The Court:
Those persons on that list meet those three criteria that we agreed to before.
Mr. Brown:
If that is so there will be no problem.
(At this time end of proceedings.) (See pp. 14-15).