718 So.2d 480 (1998)
Joseph A. WHITE, III and John L. Monson, Anthony J. Cashiola, Sr.
v.
GENERAL MOTORS CORPORATION, Brockhoeft's Chevrolet, Inc. and Hanks Pontiac-GMC-Buick, Inc.
No. 97 CA 1028.
Court of Appeal of Louisiana, First Circuit.
June 29, 1998.
Rehearing Denied August 28, 1998.
*481 J. Burton LeBlanc, IV, Jules B. LeBlanc, III, Cameron R. Waddell, Charles S. Lambert, Jr., Baton Rouge, and C. Jerome D'Aquila, New Roads, and Victor J. Woods, Jr., Port Allen, for the Objectors Fred T. Butcher, et al./1st Appellant.
Robert Leslie Porche, San Antonio, TX, Intervenor/Pro Se/2nd Appellant.
Jack M. Stolier, Bryan J. De Tray, New Orleans, Joe R. McCray San Francisco, CA, Richard H. Rosenthal, Carmel Valley, CA, and Lyndel Selden, II, San Diego, CA, for Jack French, Robert West, Charles Merritt, Joseph D. Geller and Dan Turek/3rd Appellants.
Daniel E. Becnel, Jr., Reserve, for Intervenor, Kenneth Hight/4th Appellant.
Charles C. Holbrook, Baton Rouge, and Scott A. Johnson, Clyde C. Greco, Jr., Robert B. Gerard, San Diego, CA, Andrew W. Hutton Wichita, KS, Elizabet Cabraser, San Francisco, CA, Dianne M. Nast, Lancaster, PA, and Marc Stanley, Dallas, TX, for Jesus Garibay, Robert & Lucille White, Jerome Hope, Jr. and Carlos Zabala/5th Appellants.
Timothy J. Crowley, Richard E. Norman, McKool Smith, Houston, TX, and Sam F. Baxter, Rosemary Snider, Franklin Jones, Marshall, TX, for Intervenors, Tommy Dollar, Jerry Adam and Terry Adam.
Stephen Gardner, Dallas, TX, for Center for Auto Safety.
Davis B. Allgood, Baton Rouge, David Radlauer, New Orleans, Lee Schutzman, Detroit, MI, Jeffrey Rosen, Karen Walker, Washington, DC, and Harry T. Hardin, III, Gretna, for General Motors Corp./6th Appellant.
Michael G. Crow, Karen Lewis, New Orleans, Patrick W. Pendley, Lawrence G. Gettys, Nyle A. Politz, Plaquemine, Gordon Ball, Knoxville, TN, Richard Alexander, Michael McShane, San Jose, CA, and Bryan Wolfman, Washington, DC, for Plaintiffs-Appellees.
David H. Williams, New Orleans, for Betty Youngs, et al.
Anne Crabbe, Chicago, IL, for Certificate Clearing Corporation.
Jesse Sumner Bartlesville, OK, for Consumer Objectors.
Michael Pfundstein, Miami, FL, for Objector, Darol Carr.
Before LOTTINGER, C.J.,[*] and SHORTESS and FOGG, JJ.
LOTTINGER, Chief Judge.
This is an appeal from a final judgment and order, approving the settlement of a nationwide class action following the certification of the settlement class. The class members are approximately 5.8 million individuals who, over an 18 year period, purchased mid- and full-sized General Motors pickup trucks with a model C, K, R or V chassis. In petitions filed throughout the country, it was alleged that these trucks were defective in design because the side location of the fuel tanks in these vehicles rendered them susceptible to fuel fires in side collisions. Numerous objectors have *482 challenged the class certification and the fairness and reasonableness of the settlement.

FACTS AND PROCEDURAL HISTORY
One of the petitions was filed in the Eighteenth Judicial District Court, Parish of Iberville, State of Louisiana. On February 11, 1993, Joseph A. White, III, John L. Monson and Anthony J. Cashiola (White plaintiffs), all residents of West Baton Rouge Parish, individually and on behalf of all others similarly situated, filed a petition for damages. Named as defendants were General Motors Corporation (GM), Brockhoeft's Chevrolet, Inc., and Hanks Pontiac  GMC  Buick, Inc. The petition alleged that a class action should be maintained on behalf of White plaintiffs and all other Louisiana residents who owned 1973 through 1987 GMC full size pickup trucks, series "C" or "K", purchased on or before October 16, 1992. The petition further alleged that GM was negligent or grossly negligent in its design of the trucks, in failing to warn the public of the risk of danger, and in failing to recall these trucks. The petition alleged that these acts by GM had caused economic damage in the amount of $2,500.00 for each plaintiff. The petition specifically excluded individuals who had already suffered personal injury as a result of fuel tank fires caused by a collision.
Thereafter, White plaintiffs filed a first amending and supplemental petition which specifically limited the total amount demanded for each plaintiff to less than $50,000.00.
White plaintiffs subsequently filed a second amending and supplemental petition and alleged that GM had breached its sales contract with White plaintiffs by virtue of fraudulent concealment, failure to disclose, and breach of implied warranties, which constituted failed performance and/or failed good faith performance. The petition was also amended to name only GM as a defendant.
Thereafter, GM filed a declinatory exception pleading the objections of improper venue, lack of subject matter jurisdiction, lis pendens, and alternatively, the dilatory exception pleading the objection of prematurity.
White plaintiffs filed a third amending and supplemental petition on April 19, 1993. Through this petition, Shelby Cedotal d/b/a Cedotal Farms and Wilbert Cole were added as plaintiffs.[1] Additionally, the petition set forth more allegations in support of class action status. The petition also alleged several causes of action, including redhibition, products liability, and uniform negligent misrepresentation/omission.
On April 19, 1993, White plaintiffs also filed a motion for class certification pursuant to La.C.C.P. arts. 591-597. The requested class was defined, in pertinent part, as follows:
All persons residing and all entities operating in the State of Louisiana, who or which own at least one Chevrolet or GMC fullsized pickup truck from the range of model years 1973 through 1987, within any of the following manufacturer-designated categories:

C 10 (½ ton) C 1500 (½ ton)
C 20 (¾ ton) C 2500 (¾ ton)
C 30 (1 ton) C 3500 (1 ton)
K 10 (½ ton) K 1500 (½ ton)
K 20 (¾ ton) K 2500 (¾ ton)
K 30 (1 ton) K 3500 (1 ton)

Not included within the above class definition are those persons who may have already suffered personal injury as a result of a post-collision fuel-fed fire involving a Chevrolet or GMC pickup truck. Also excluded is defendant GM, its subsidiaries, affiliates, officers and directors, members of their immediate families, any entities in which defendant has a controlling interest, and the officers, directors, affiliates, legal representatives, heirs, successors, subsidiaries, and/or assigns of any such individual or entity.
GM filed motions in opposition to the motion for class certification.
On April 22, 1993, GM reurged its declinatory and dilatory exceptions in response to the third amending and supplemental petition. GM also added a dilatory exception pleading the objection of improper cumulation of actions.
*483 On April 29, 1993, White plaintiffs filed a fourth amending and supplemental petition which reiterated the allegations contained in the previous petitions, and added allegations that venue was proper in Iberville Parish. Thereafter, GM reurged its declinatory and dilatory exceptions in response to the fourth amending and supplemental petition.
On May 17, 1993, the trial court rendered judgment, ordering that a class action be certified and that Notice of Certification of this class action be disseminated. In its written reasons for judgment, the trial court noted that GM had stipulated that neither numerosity nor adequacy of class counsel would be disputed. Thereafter, the trial court set forth findings in support of the requirements of adequacy of representation and common character. On this date, the trial court rendered a separate judgment, denying GM's exceptions of improper venue, lack of subject matter jurisdiction, lis pendens, and improper cumulation of actions.[2]
On May 21, 1993, GM filed a petition for suspensive appeal of both of the judgments rendered on May 17, 1993. The petition was granted and a bond was set.
While this matter was proceeding in the Eighteenth Judicial District Court, GM had removed several similar state actions to federal court[3] and successfully moved that the Judicial Panel on Multi-District Litigation (MDL Panel) transfer all related actions to the Federal District Court for the Eastern District of Pennsylvania. Plaintiffs in the MDL proceeding filed a consolidated class action complaint and a motion for nationwide class certification. Shortly thereafter, a settlement agreement between the parties was announced. The federal district court preliminarily approved the settlement as reasonable, and provisionally certified the settlement class of GM truck owners, which covered owners in Louisiana and all other states except Texas. After a fairness hearing was held, the federal district court certified the settlement class and approved the settlement. Several objectors to the settlement appealed. The orders, certifying the settlement class and approving the settlement, were vacated and the case was remanded to the district court for further proceedings. In re General Motors Corporation Pick-Up Truck Fuel Tank Products Liability Litigation, 55 F.3d 768 (3rd Cir.1995), cert. denied, 516 U.S. 824, 116 S.Ct. 88, 133 L.Ed.2d 45 (1995) (hereinafter referred to as "GM Truck").
Because of the potential settlement of the suit in federal court, the parties in this case filed a joint motion to stay the appeal pending in this court. This court stayed the briefing schedule on August 9, 1993. Apparently, as a result of the decision rendered in GM Truck, the parties jointly moved to lift the stay in this court on January 23, 1996. Briefing was completed on April 11, 1996.
Pursuant to a joint motion, this court issued an order on June 26, 1996, staying the appeal and partially remanding the case to allow the trial court to consider and administer a proposed class settlement as follows:
1. to consider a proposed amendment to the Petition;
2. to consider a Motion for Certification of a Settlement Class, Preliminary Approval of Agreement of Settlement and Authorization to Disseminate Class Notice;
3. to oversee notice to the proposed settlement class; and
4. to conduct proceedings on the fairness, reasonableness and adequacy of the proposed class settlement, to finally approve the settlement if it is determined to be fair, reasonable, and adequate, and dismiss the litigation with prejudice.
This court retained jurisdiction over the matters pending in the appeal before it.[4]
*484 Proceedings in the Eighteenth Judicial District Court were non-existent until July 3, 1996, when a hearing was held and several documents were filed with the court. This activity was precipitated by the fact that an Agreement of Settlement, dated June 26, 1996, had been reached between GM and White plaintiffs. The Agreement of Settlement is attached to this opinion as Appendix A.
At this hearing, the White plaintiffs filed a fifth amended and supplemental petition, individually and on behalf of others similarly situated.[5] This petition filed was brought on behalf of the following class:
All Consumers, Fleets and Governmental Entities who are residents of the United States and who purchased in the United States and are owners as of 12:01 AM, July 4, 1996, of any of the following GM PICKUP TRUCKS:
(i) 1973 through 1986 model year General Motors full-size pickup trucks or chassis cab models of the "C" or "K" series. These include the following models: Chevrolet C10, C20, C30, K10, K20, K30 and GMC Truck C1500, C2500, C3500, K1500, K2500, K3500;
(ii) 1987 through 1991 model year General Motors full-size pickup trucks or chassis cab models of the "R" or "V" series. These include the following models: Chevrolet R10, R20, R30, R2500, R3500, V10, V20, V30, V2500, V3500 and GMC Truck R1500, R2500, R3500, V1500, V2500, and V3500.
Vehicles that have been scrapped or are owned by scrap yards or reclamation centers as of July 4, 1996, are not included.
The petition alleged several causes of action, including breach of warranty, product liability and uniform negligent misrepresentation/omission.
Additionally, the Parish of Jefferson filed a motion and order to intervene for the sole purpose of serving as a class representative on behalf of Governmental Entities in the class action sought to be certified for settlement purposes. The Parish of Jefferson supported the proposed Agreement of Settlement. The Parish of Jefferson's motion to intervene was granted by the trial court.
A motion to intervene on behalf of all Texas residents was filed by Tommy Dollar, Jerry Adam, and Terry Adam (Texas plaintiffs). In addition, counsel for Texas plaintiffs sought to be named Class Counsel along with other counsel. Both requests were granted by the trial court.
William Lewis, et al., C/K pickup truck owners named as plaintiffs in the second consolidated amended class action complaint filed in the MDL proceedings (MDL plaintiffs[6]), filed a petition to intervene and a petition by intervenors to support the motion for (1) certification of the settlement class; (2) preliminary approval of the Agreement of Settlement; and (3) authorization to disseminate class notice. MDL plaintiffs also expressed their intent to join in the fifth amended and supplemental petition filed by White plaintiffs. In addition, MDL plaintiffs filed a motion to intervene, which included a request that Co-Lead Counsel and Plaintiffs' Executive Committee in the MDL proceedings be appointed to serve as counsel for the Settlement Class along with other counsel. Both requests were granted by the trial court.
Finally, pursuant to a motion filed by White plaintiffs at the hearing, the trial court signed an order on the same date which (1) conditionally certified that this action may proceed as a class action; (2) found the terms of the Agreement of Settlement sufficiently fair, reasonable and adequate to allow dissemination of notice of the proposed agreement to members of the settlement *485 class; (3) approved the form and provision for giving the Summary Notice of Pendency of Class Action, Proposed Settlement and Hearing; (4) appointed class counsel;[7] (5) directed parties to proceed to negotiate reasonable attorney's fees, costs and expenses; (6) set the dates by which notice had to be mailed to the class members and published in the USA Today; (7) set the dates for various pleadings and memoranda to be filed; and (8) scheduled the fairness hearing for November 6, 1996.
The trial court issued a supplemental order preliminarily approving the class settlement on August 28, 1996, and appointed Joseph A. White, III and Wilbert Cole as the Consumer sub-class representatives; the Parish of Jefferson, State of Louisiana, as the representative of the Governmental Entity sub-class representative; and King Landscaping & Sod of SW FL, Inc. as the Fleet sub-class representative. The court also approved a revised Notice for dissemination to class members.
On September 3, 1996, GM mailed the notice to all registered owners of class vehicles (5,836,619), and it published the full text of the notice in USA Today.
In response to the notice, 7,723 owners elected to be excluded from the class and 2,508 owners objected to the settlement. Approximately 116,000 notices were returned as undeliverable.
Several objectors filed petitions and/or motions to intervene in this case: Kenneth Hight, the French objectors, the Garibay objectors, and the Butcher objectors.[8] The objectors complained primarily about the proposed settlement, contending that it was inadequate and did not address the defect in the trucks. The objectors also contended that the class certification was not proper under Rule 23.
A settlement fairness hearing was held on November 6, 1996, during which the objectors who had filed timely objections and notices of intention to appear were allowed to present arguments and introduce testimony and evidence. The hearing consisted of argument of various counsel and the introduction of evidence.
On December 19, 1996, the trial court rendered a "Final Order and Judgment", approving the Agreement of Settlement pursuant to La.C.C.P. art. 594, finding it fair, reasonable, and adequate.[9] The trial court also confirmed its previous order, which had provisionally certified the settlement class. In certifying the settlement class, the court found that the class met the requirements of numerosity, adequacy of representation, and common character of the right asserted. The trial court also granted the Class Counsels' various requests for attorneys' fees, costs and expenses. The "Final Order and Judgment" is attached to this opinion as Appendix B.[10]
On January 7, 1997, the trial court, on its own motion, rendered a "Judgment of Amendment", changing the notice of final approval to be sent to class members to reflect that GM, rather than Class Counsel, was to notify all members of the settlement at its own expense.[11]
*486 Several groups of objectors have appealed, complaining of the class certification and the fairness and reasonableness of the settlement. Additionally, GM has appealed from the trial court's award of attorneys' fees.

CLASS ACTIONS IN LOUISIANA
In Ford v. Murphy Oil U.S.A., Inc., 96-2913 pp. 4-9 (La. 9/9/97); 703 So.2d 542, 544-547, the Louisiana Supreme Court gave a thorough analysis of the class action in Louisiana.
The class action is a nontraditional litigation procedure permitting a representative with typical claims to sue or defend on behalf of, and stand in judgment for, a class of similarly situated persons when the question is one of common or general interest to persons so numerous as to make it impracticable to bring them all before the court. See Herbert B. Newberg & Alba Conte, 1 Newberg on Class Actions, § 1.01, p. 1-2, 1-3 (3d ed. 1992). The purpose and intent of class action procedure is to adjudicate and obtain res judicata effect on all common issues applicable not only to the representatives who bring the action, but to all others who are "similarly situated," provided they are given adequate notice of the pending class action and do not timely exercise the option of exclusion from the class action.
The class action originated in eighteenth century English equity courts, as an exception to the rule that joinder of all interested parties was necessary to obtain complete justice. In the United States, the class action procedure was available only in equity until 1938 when the Federal Rules of Civil Procedure were enacted. Original Rule 23 recognized the "true" class action, which concluded the rights of all class members, whether named in the suit or not; the "hybrid" class action, in which class members made separate claims against a common fund or property; and the "spurious" class action, in which the members of the class made separate claims involving common questions of law or fact. The "true" class action was described by original Rule 23(a) as an action in which "the right to enforcement for .... the class was ... joint, or common, or secondary in the sense that the owner of primary right refuses to enforce it and class member thus becomes entitled to enforce it." As opposed to judgments in "true" class actions, judgments in "spurious" and "hybrid" class actions did not determine the rights of absent class members.
In 1961, Louisiana enacted Articles 591-597 of the Code of Civil Procedure, modeled after original Federal Rule 23. However, the redactors of the Code of Civil Procedure rejected the hybrid and spurious class action models, authorizing only "true" class actions. La.C.C.P. art. 591, Comment (c). In 1966, Federal Rule 23 was amended, eliminating the three categories of class actions. Accordingly, the statutes governing class actions in Louisiana originated from the federal class action statute as it existed between 1938 and 1966, before the explosion of "mass tort" class actions, and with the express legislative intent to recognize only "true" class actions under the original federal rule because of the availability of Louisiana's liberal joinder and intervention rules.
Because a "mass tort" class action would typically fall under the definition of a "spurious" class action, now superseded by Rule 23(b)(3), see Amchem Products, Inc. v. Windsor, 521 U.S. 591, ____, 117 S.Ct. 2231, 2245, 138 L.Ed.2d 689 (1997), it is problematic to apply Articles 591-597 in mass tort cases.
[Prior to its 1997 amendment], Article 591 provided:
A class action may be instituted when the persons constituting the class are so *487 numerous as to make it impracticable for all of them to join or be joined as parties, and the character of the right sought to be enforced for or against the members of the class is:
(1) Common to all members of the class; or
(2) Secondary, in the sense that the owner of a primary right refuses to enforce it, and a member of the class thereby becomes entitled to enforce the right.
....
Early Louisiana class action jurisprudence recognized the stringent common interest requirements of the original Rule 23 "true" class action, although the tests employed by the circuits differed. We first interpreted this provision in Stevens v. Board of Trustees of Police Pension Fund, 309 So.2d 144 (La.1975). In Stevens, we held that the fact that different recoveries are sought, based upon the same factual transaction and same legal relationship, was not intended to defeat a class action. 309 So.2d at 149. However, we explained that because "hybrid and spurious class actions generally required no more connexity between the rights of the representative and of the absent members than the existence of a common question of law or fact, whereas the true class action required a stronger relationship between the claims," when the legislature rejected the hybrid and spurious class actions, they "intended that there be a relationship between the claims greater than simply that of sharing a common question of law or fact." Id. at 150. In discussing the term "common character of the right sought to be enforced," we looked to the federal rules and noted that those rules were revised in 1966 because of the "difficulty of characterization required by this term of indefinite and imprecise meaning" and to describe "in more practicable terms the occasions for maintaining class actions." Id.

We thus adopted what we then called the "discretionary grant" given to trial judges in amended Federal Rule 23(b) as guidelines to be used by Louisiana courts in determining whether to allow a class action. Id. Federal Rule 23(b) provides:
An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
(1) the prosecution of separate actions by or against individual members of the class would create a risk of
(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.
Id. at 151. F.R.C.P. 23(b). Although an action may be maintained as a class action in federal court when all the requirements of 23(a) are met and just one of the requirements of 23(b) are met, in Stevens we directed Louisiana courts to consider every *488 requirement of 23(b) in determining whether to allow a class action. In addition, we summarized the intertwined values of effectuating substantive law, judicial efficiency, and individual fairness involved in allowing a class action as follows:
In determining how the legislature intended the courts to define and apply the concept of allowing a class action to enforce rights with a common character, we are mindful of the basic goals or aims of any procedural device: to implement the substantive law, and to implement that law in a manner which will provide maximum fairness to all parties with a minimum expenditure of judicial effort. Implicit, then, in decision that rights are of a common character is a consideration of the extent to which a clear legislative policy might be thwarted, or hampered in its implementation, by the lack of availability of the class action device. But this does not end the inquiry. Fairness to the parties demands at the least that the relationship between the claims of members of the class should be examined to determine whether it would be unfair to the members of the class, or to the party opposing the class, to permit separate adjudication of the claims. In determining whether it would be unfair to require separate adjudications, for instance, the courts should consider the precedential value of the first decision, as well as the extent of injustice that will be produced by inconsistent judgments in separate actions. Another factor to be considered, for example, is the size of the claims of the absent members of the class, for the greater the claim, the greater the interest of its owner in prosecuting it in a separate action. Id. at 151 (Footnotes omitted).
In Ford v. Murphy Oil, U.S.A., Inc., the court ultimately determined that the class before it was improperly certified. The court found that the character of the right sought to be enforced was not common to all members of the class. The court noted that its holding was consistent with the holding in Amchem Products, Inc. v. Windsor, which affirmed the decertification of a nationwide asbestos case brought for settlement purposes because the class action failed the "predominance" requirement of Rule 23(b)(3) and the "adequacy" requirement of Rule 23(a)(4).
Thus, La.C.C.P. arts. 591 and 592,[12] as they read at the time this action was filed, set forth the criteria for a class action. All three of the elements must be met for a class action to be appropriate, and it is well settled that it is plaintiff's burden to prove each element by a preponderance of the evidence. The trial court is afforded great discretion in class action certification. Wide latitude must be given the trial court in considerations involving policy matters and requiring an analysis of the facts under guidelines helpful to a determination of the appropriateness of a class action. In other words, the trial court had great discretion in deciding whether a suit should be certified as a class action. Unless the trial court had committed manifest error in its factual findings, or has abused its discretion in deciding that class certification is appropriate, we must affirm the trial court's determination. Lewis v. Texaco Exploration and Production Co., Inc., 96-1458 at p. 14; 698 So.2d at 1012.
The first requirement, that the persons constituting the class are so numerous as to make joinder impracticable, is often referred to as "numerosity." Becnel v. United Gas Pipeline Company, 613 So.2d 1155, 1157 (La. App. 5th Cir.1993).
The second requirement, "proper joinder", is to ensure adequate representation of the absent class members by requiring that one or more of the class members will represent the interests of the entire class adequate. Becnel v. United Gas Pipeline Company, 613 So.2d at 1158.
Finally, in order to maintain the class action, there must not only be a common question of law or fact as required by La. C.C.P. art. 591(1), there must also be a "common *489 character" among the rights of the representatives and absent class members. Lewis v. Texaco Exploration Production Co., Inc., 96-1458 p. 17; 698 So.2d at 1013. The questions of law or fact common to the members of the class must predominate over any questions affecting only individual members. Lewis v. Texaco Exploration Production Co., Inc., 96-1458 p. 17; 698 So.2d at 1013; Becnel v. United Gas Pipeline Company, 613 So.2d at 1158. However, as earlier noted, the phrase "common character" encompasses more than the simple existence of questions of law and fact common to the class.

THE SETTLEMENT CLASS
The settlement class device is not mentioned in the federal class action rule nor is it mentioned in the Louisiana class action statutes. However, federal jurisprudence has construed Federal Rule of Civil Procedure 23 to allow for the settlement class device. Some have interpreted the provisions of Rule 23(d) as a broad grant of authority to manage the class action, giving the court power to manage the class action.[13] Some courts have conceived of settlement classes as a temporary assumption by the court to facilitate settlement. As noted by the court in GM Truck, 55 F.3d at 778:
[I]t is a judicially crafted procedure. Usually, the request for a settlement class is presented to the court by both plaintiff(s) and defendant(s); having provisionally settled the case before seeking certification, the parties move for simultaneous class certification and settlement approval. Because this process is removed from the normal, adversarial, litigation mode, the class is certified for settlement purposes only, not for litigation. Sometimes, as here, the parties reach a settlement while the case is in litigation posture, only then moving the court, with the defendants' stipulation as to the class's compliance with the Rule 23 requisites, for class certification and settlement approval. In any event, the court disseminates notice of the proposed settlement and fairness hearing at the same time it notifies class members of the pendency of class action determination. Only when the settlement is about to be finally approved does the court formally certify the class, thus binding the interests of its members by the settlement.
The conditional nature of the settlement class device may also be allowed under the provisions of Federal Rule 23(c)(1) which provides as follows:
As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. An order under this subdivision may be conditional, and may be altered or amended before the decision on the merits.
Whether a settlement class device is available under the Louisiana class action statutes is res nova in Louisiana courts. However, a review of the present Louisiana class action statutes reveals no impediment to the use of the settlement class device.[14] In fact, at the time this action was filed La.C.C.P. art. 593.1 provided Louisiana courts with authority similar to that given by Federal Rule 23(c)(1):
A. After commencement of an action by or on behalf of parties alleged to be *490 members of a class, the court, on its own motion, or on the motion of any party or on trial of any exception directed to such issue, shall determine whether the action may be properly maintained as a class action as a prerequisite to any further proceedings therein. If the court finds that the action should be maintained as a class action, it shall certify the action accordingly; otherwise the action shall be dismissed. The court may permit amendment of the pleadings in the action to permit maintenance thereof as an ordinary proceeding on behalf of parties expressly named therein.
B. In the process of class certification or at any time thereafter before decision on the merits, the court may alter, amend or recall its certification and may enlarge, restrict, or otherwise redefine the constituency of the class or the issues to be maintained in the class action.
In Amchem Products, Inc. v. Windsor, the U.S. Supreme Court granted review to decide the role settlement may play, under existing Rule 23, in determining the propriety of class certification. The court stated that settlement is relevant to a class certification but also noted as follows:
Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed.Rule Civ.Proc. 23(b)(3)(D), for the proposal is that there be no trial. But other specifications of the rule  those designed to protect absentees by blocking unwarranted or overbroad class definitions  demand undiluted, even heightened, attention in the settlement context. Such attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold.
Amchem Products, Inc. v. Windsor, ___ U.S. at ___, 117 S.Ct. at 2248. The court went on to explain as follows:
Rule 23(e), on settlement of class actions, reads in its entirety: "A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs." This prescription was designed to function as an additional requirement, not a superseding direction, for the "class action" to which Rule 23(e) refers is one qualified for certification under Rule 23(a) and (b). Cf. Eisen, 417 U.S., at 176-177, 94 S.Ct., at 2151-2152 (adequate representation does not eliminate additional requirement to provide notice). Subdivisions (a) and (b) focus court attention on whether a proposed class had sufficient unity so that absent members can fairly be bound by decision of class representatives. That dominant concern persists when settlement, rather than trial, is proposed.
Amchem Products, Inc. v. Windsor, ___ U.S. at ___, 117 S.Ct. at 2248.
La.C.C.P. art. 594(A), like Federal Rule 23(e), requires a judge's approval to settle a class action:
A class action shall not be dismissed or compromised without the approval of the court exercising jurisdiction over the class action. Notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs.

PRINCIPLES APPLIED
In the case at hand, the trial court made findings of numerosity, adequacy of representation and common character of the right asserted. These findings were made pursuant to Articles 591 and 592 of the Louisiana Code of Civil Procedure.
In determining that the "common character" requirement was satisfied, the trial court stated as follows:
On May 17, 1993, this Court certified a statewide class of owners of C/K Trucks in this case, asserting claims on behalf of Louisiana residents virtually identical to those now asserted on behalf of a nationwide class. The Court at that time determined that the allegation that the outside the frame tanks on C/K Trucks were defective was sufficient to meet Louisiana's common character requirement. GM contested that finding and appealed. Nonetheless, the Court is satisfied that any dispute over the propriety of the certification of a nationwide class should be resolved *491 in favor of certifying the Settlement Class. A court may certify a class for settlement purposes even where it could not certify the same class for litigation purposes. In re: Beef Industry Antitrust Litigation, 607 F.2d 167 (5th Cir.1979), cert. den'd, 452 U.S. 905, 101 S.Ct. 3029, 69 L.Ed.2d 405 (1981). Because these claims are being resolved by virtue of the Settlement, issues of differences in the design of the C/K Trucks, different applicable laws, prescription, and other issues that GM may argue prevent certification of a national class for trial purposes will not need to be decided. On the contrary, predominant common issue now is whether the Settlement is a fair, reasonable and adequate compromise of class members' claims. Consequently, the court is persuaded that the Settlement should be considered in determining whether the class should be certified. In re: Asbestos Litigation, 90 F.3d 9[6]3 (5th Cir.1996); Dunk v. Ford Motor Co., 48 Cal.App.4th 1794, 56 Cal.Rptr.2d 483 (4th Dist.1996). (Emphasis ours).
Clearly, the trial court did not consider any of the requirements of Federal Rule 23(b), in contravention of the dictates of Amchem Products, Inc. v. Windsor and Louisiana jurisprudence.[15] In fact, the trial court did what the Amchem court specifically noted that federal courts lacked authority to do  substitute for Rule 23's certification criteria a standard never adopted  that if a settlement is "fair", then certification is proper. Amchem Products, Inc. v. Windsor, ___ U.S. at ___, 117 S.Ct. at 2249.
We note that any reliance by the trial court on its certification of the statewide class on May 17, 1993, is misplaced. The number of plaintiffs drastically increased and the issues become more complex in the certification of a nationwide class.[16]
The trial court's findings referred to "possible differences in the design of the C/K trucks, different applicable laws, prescription, and other issues that GM may argue prevent certification of a national class", all of which involve questions of law or fact pertinent in resolving the predominance question under Federal Rule 23(b)(3) and La.C.C.P. art. 591. However, a thorough review demonstrates that the record is devoid of any evidence on these particular issues. The only references to these issues by the parties were made in the context of the fairness of the settlement.[17] Thus, the record does not support the trial court's certification of the class action.
Because of the reversal and remand of this matter, we pretermit the motion to dismiss the appeal of Intervenors Kenneth Hight, et al.

CONCLUSION
For the foregoing reasons, the final order and judgment of the trial court, certifying the nationwide class and giving final approval to the Agreement of Settlement, is vacated and the case is remanded to the trial court for further proceedings consistent with this opinion. Costs of this appeal are assessed to plaintiffs-appellees.
REVERSED AND REMANDED.

APPENDIX A

Joseph A. White, III,

John L. Monson and Anthony

O. Cashiola, Sr.

Versus

General Motors Corporation

Number 42,865 Div. "D"

18th Judicial District Court

Parish of Iberville

State of Louisiana

AGREEMENT OF SETTLEMENT
THIS AGREEMENT is entered into this 27th day of June, 1996, by and between
*492 General Motors Corporation (hereinafter "General Motors") and Plaintiffs in Joseph A. White, III, John L. Monson and Anthony O. Cashiola, Sr. v. General Motors Corporation, by and through their undersigned attorneys.

I. PREAMBLE
WHEREAS, General Motors is a corporation organized under the laws of the State of Delaware and is engaged in the business of, among other things, manufacturing automotive products;
WHEREAS, Plaintiffs are the named plaintiffs in the above styled Petition pending in the 18th Judicial District Court for the Parish of Iberville ("the Court"), which was filed as a class action on behalf of registered owners of certain 1973 through 1987 model Chevrolet or GMC Truck "C" or "K" series pickup trucks (the "Litigation");
WHEREAS, Plaintiffs have asserted claims in the Petition based on allegations that GM PICKUP TRUCKS are equipped with fuel tanks mounted on the outside of the frame rails which are defective in placement, design and implementation and seek compensation in connection therewith;
WHEREAS, General Motors denies the material allegations in the Petition, denies any wrongdoing of any kind;
WHEREAS, the parties have the benefit of extensive discovery and have independently investigated the facts and analyzed the legal issues, and recognize the uncertainties of the outcome in the litigation and the likelihood that any final result would require years of further complex litigation and substantial expense;
WHEREAS, Plaintiffs' Counsel on behalf of the SETTLEMENT CLASS believe, in light of the costs, risks and delay of litigation balanced against the benefits of the settlement to the SETTLEMENT CLASS, that settlement at this time as provided in this Agreement will be in the best interests of the SETTLEMENT CLASS;
WHEREAS, General Motors and Plaintiffs' Counsel agree that the settlement provided in this Agreement is a fair, reasonable, and adequate resolution of the Litigation;
WHEREAS, the parties desire to compromise and settle in the Litigation all issues and claims which relate to the subject matter of the Litigation and which have been, or which could have been brought in this or in any other state or federal court or in any other proceeding, of any kind or nature whatsoever by or on behalf of persons who are included in the SETTLEMENT CLASS, except claims arising from personal injury, death or physical damage to property that have resulted or may result from vehicle fires or crashes;
WHEREAS, the parties desire and intend to seek Court approval of the settlement of the Litigation as set forth in this Agreement and, upon Court approval, the parties intend also to seek a Final Order and Judgment from the Court dismissing the claims of all members of the SETTLEMENT CLASS with prejudice;
NOW, THEREFORE, it is agreed that in consideration of the premises and mutual covenants set forth in this Agreement and the entry by the Court of a Final Order and Judgment dismissing with prejudice the claims asserted in this Litigation by all members of the SETTLEMENT CLASS and approving the terms and conditions of the settlement as set forth in this Agreement, as required by the Louisiana Code of Civil Procedure, the Litigation shall be settled and compromised under the terms and conditions contained herein.

II. DEFINITIONS
As used throughout this Agreement and in the Exhibits annexed hereto, in addition to any definitions elsewhere in this Agreement, the following terms shall have the meanings set forth below:
(a) "CHEVROLET" shall mean the Chevrolet Motor Division of General Motors.
(b) "CLASS COUNSEL" shall mean counsel appointed by the Court to represent the Settlement Class.
(c) "CONSUMER" shall mean any SETTLEMENT CLASS member owning one or two GM PICKUP TRUCKS and shall *493 include any parent, child, sibling or spouse of a CONSUMER, who is residing within the same household as the CONSUMER at the time the CERTIFICATE is used.
(d) "EFFECTIVE DATE OF SETTLEMENT" shall be the day on which the Final Order and Judgment described in Paragraph VII.4. below becomes final. For purposes of the Agreement, the Final Order and Judgment shall be deemed to become final on the later of (i) the 71st day after it is entered (the day following the date on which it is no longer subject to review by appeal or otherwise) if no motion for new trial or notice of appeal is filed or (ii) if any such documents are filed, on the day following the date on which the Final Order and Judgment is not subject to further judicial review or appeal, either by reason of affirmance by a court of last resort or by reason of lapse of time or otherwise, provided that the final Order and Judgment are not reversed or substantially modified by the Court or an appellate court.
(e) "FLEET" shall mean any SETTLEMENT CLASS member which is either a person or entity owning three or more GM PICKUP TRUCKS, except a GOVERNMENTAL ENTITY or the United States government.
(f) "FUEL SYSTEM" shall mean the design, manufacture and placement of the fuel tanks outside the frame rails and all related fuel system designs and components, including fuel lines, fuel pumps, fuel filler neck, fill cap, fuel tank shields, attachment devices, and surrounding structure and components of GM PICKUP TRUCKS.
(g) "GM PICKUP TRUCK[S]" means (i) 1973 through 1986 model year General Motors full-size pickup truck or chassis cab models of the "C" or "K" series which include the following models: Chevrolet C10, C20, C30, K10, K20, K30 and GMC Truck C1500, C2500, C3500, K1500, K2500, K3500 and (ii) 1987 through 1991 model year General Motors full-size pickup truck or chassis cab models of the "R" or "V" series, which include the following models: Chevrolet R10, R20, R30, R2500, R3500, V10, V20, V30, V2500, V3500 and GMC Truck R1500, R2500, R3500, V1500, V2500 and V3500. GM Pickup Trucks that have been scrapped are not included.
(h) "GMC TRUCK" shall mean the GMC Truck Division of General Motors, now known as the Pontiac GMC Division.
(i) "GOVERNMENTAL ENTITY" shall mean any governmental unit, including, but not limited to cities, states, counties, parishes, municipalities, townships or any subdivisions or agencies thereof, and shall also include any governmental unit known by any other name, regardless of the number of GM PICKUP TRUCKS owned, except for the United States government;
(j) "NEW GM VEHICLE" shall mean any new and unused General Motors light truck or automobile, which include Chevrolet, Geo, GMC Truck, Buick, Oldsmobile, Pontiac and Cadillac models. NEW GM VEHICLE shall not include Saturn models or electric powered vehicles.
(k) "SETTLEMENT CLASS" shall separately include a CONSUMER sub-class, a FLEET sub-class, and a GOVERNMENTAL ENTITY sub-class and shall be defined as: All CONSUMERS, FLEETS and GOVERNMENTAL ENTITIES who purchased in the United States and are owners as of 12:01 AM, July 4, 1996, of one or more GM PICKUP TRUCKS. "Settlement Class Members" shall mean all persons or entities within one or more of the sub-classes who do not submit a request for exclusion from the SETTLEMENT CLASS within the time and in the manner provided in this Agreement and the Court's Order and Notice.

III. BENEFITS TO SETTLEMENT CLASS MEMBERS
In consideration for dismissal of the Litigation with prejudice against the Settlement Class under the terms of this Agreement, General Motors agrees as follows:
Upon receipt of a Proof of Claim form postmarked within 15 months following the mailing of the final notice pursuant to paragraph VII.7., an entity or entities selected by CLASS COUNSEL and General Motors and paid by General Motors, subject to Court approval, shall issue to each SETTLEMENT *494 CLASS member for each GM PICKUP TRUCK owned a Certificate toward the purchase of any NEW GM VEHICLE purchased from an authorized GM dealer of that line and make subject to the following terms and conditions:
A. For CONSUMERS, the CONSUMER Certificates shall be usable for a total of thirty three months following the mailing of the final notice pursuant to paragraph VII.7. for the following amounts as specified below, and shall only be transferable as set forth below:
1. For the first 15 months, $1,000 toward the purchase of a NEW GM VEHICLE when used by the CONSUMER (as defined in paragraph II.(c)) named on the CONSUMER Certificate. The CONSUMER Certificate shall be freely transferable to any purchaser, except an authorized General Motors dealer or its affiliated entities, of the GM PICKUP TRUCK identified on the CONSUMER Certificate, and may be used by the transferee toward the purchase of any NEW GM VEHICLE in the same manner as it could have been used by the CONSUMER, provided the transferee is the current owner of the GM PICKUP TRUCK at the time of purchase of the NEW GM VEHICLE and provides proof of current ownership (registration or title).
2. For the final 18 months, $500 toward the purchase of a NEW GM VEHICLE when used by the CONSUMER (as defined in paragraph II.(c)) named on the CONSUMER Certificate.
3. During the final 18 month period, the Certificates shall be freely transferable following endorsement by the CONSUMER, provided that upon transfer a Certificate may only be used by a transferee for $250 toward the purchase of any NEW GM VEHICLE by the transferee.
B. For FLEETS, the FLEET Certificates shall be usable for a total of fifty months following the mailing of the final notice pursuant to paragraph VII.7. for the following amounts and shall only be transferable as set forth below:
1. For the first 15 months, $1,000 toward the purchase of a NEW GM VEHICLE when used by the FLEET named on the FLEET Certificate. The FLEET Certificate shall be freely transferable to any purchaser of the GM PICKUP TRUCK identified on the FLEET Certificate, except an authorized General Motors dealer or its affiliated entities, and may be used by the transferee toward the purchase of any NEW GM VEHICLE in the same manner as it could have been used by the FLEET, provided the transferee is the current owner of the GM PICKUP TRUCK at the time of the purchase of the NEW GM VEHICLE and provides proof of current ownership (registration or title).
2. For the final 35 months, $250 toward the purchase of a NEW GM VEHICLE when used by the FLEET named on the FLEET Certificate.
C. For GOVERNMENTAL ENTITIES, the Certificates shall be usable for a total of fifty months following the mailing of the final notice pursuant to paragraph VII.7. for the following amounts and shall only be transferable to other departments or divisions of that GOVERNMENTAL ENTITY, except as provided below:
1. For the first 15 months, $1,000 toward the purchase of a NEW GM VEHICLE when used by the GOVERNMENTAL ENTITY named on the GOVERNMENTAL ENTITY Certificate or other departments or divisions of that GOVERNMENTAL ENTITY. The GOVERNMENTAL ENTITY Certificate shall be freely transferable to any purchaser of the GM PICKUP TRUCK identified on the GOVERNMENTAL ENTITY Certificate, except an authorized General Motors dealer or its affiliated entities, and may be used by the transferee toward the purchase of any NEW GM VEHICLE in the same manner as it could have been used by the GOVERNMENTAL ENTITY, provided the transferee is the current owner of the GM PICKUP TRUCK at the time of purchase of the NEW GM VEHICLE and provides proof of current ownership (registration or title).
2. For the next 35 months, $250 toward the purchase of a NEW GM VEHICLE *495 when used by the GOVERNMENTAL ENTITY named on the GOVERNMENTAL ENTITY Certificate.
D. Alternatively, CONSUMERS, FLEETS and GOVERNMENTAL ENTITIES with CONSUMER Certificates, FLEET Certificates or GOVERNMENTAL ENTITY Certificates (collectively referred to as "Certificate" or "Certificates") may sell or transfer their entire interest in any or all of their Certificates. In the event of such a sale or transfer, each Certificate may be exchanged for a Third Party Certificate which shall be issued in the name of the person or entity designated on the written request referred to below. The Third Party Certificate may only be used for the unexpired portion of the first 15 months and is not transferable further. Any time that elapses between submission of a request for Third Party Certificate and the issuance shall be excluded from the unexpired portion of the first 15 months. To obtain a Third Party Certificate, the Certificate must be sent to an entity or entities, selected by CLASS COUNSEL and General Motors and approved by the Court, with a written request-that the Third Party Certificate be issued in the name of the designated person or entity. The written request shall state the name and address of the designated person or entity. The charge for issuance of the Third Party Certificate will not exceed $5.00 and will be paid by the party seeking the Third Party Certificate. The third party named on the Third Party Certificate may use it toward the purchase of a NEW GM VEHICLE without proof of ownership of a GM PICKUP TRUCK. The Third Party Certificate may be used for $500 toward the purchase of any NEW GM VEHICLE, except that when used, at the user's election, with any GM rebate and/or discount it may be used for $250 toward the purchase of any NEW GM VEHICLE.
E. The following conditions are applicable to all Certificates:
1. No trade-in of a GM PICKUP TRUCK is required to purchase a NEW GM VEHICLE with the use a Certificate.
2. Certificates may only be used toward the purchase of a NEW GM VEHICLE from an authorized General Motors dealer of that line and make. Any Certificate may be used toward the down payment on the purchase from an authorized General Motors dealer of that line and make of a NEW GM VEHICLE. Certificates may not be used toward the rental or lease of NEW GM VEHICLES.
3. Holders of Certificates are not required to disclose their intention to use a Certificates toward the purchase of a NEW GM VEHICLE until they have made their best deal with the dealer.
4. If a NEW GM VEHICLE is ordered by the holder of a Certificate from an authorized GM dealer during the Redemption Period, but General Motors is unable to deliver the vehicle within that period, the Certificate will be honored when the NEW GM VEHICLE is purchased at the value of the Certificate at the time of the order.
5. One (1) Certificate will be issued for each GM PICKUP TRUCK owned by the requesting SETTLEMENT CLASS member. Only one (1) Certificate of any kind provided by this Agreement may be applied toward the purchase of each NEW GM VEHICLE.
6. No certificates of any kind provided by this Agreement may be used by any authorized General Motors dealer or its affiliated entities toward the purchase of any vehicle from General Motors.
7. Certificates may be used toward the purchase of any NEW GM VEHICLE from an authorized General Motors dealer of that line and make in addition to any rebate and/or discount otherwise available to the purchaser at the time of the purchase of a NEW GM VEHICLE, except as specifically provided in paragraph III.D. of this Agreement. General Motors and CLASS COUNSEL will use their best reasonable efforts to resolve any disputes or problems which may arise with a dealer regarding the redemption of any Certificate.
8. Certificates may not be transferred to authorized General Motors dealers or their affiliated entities during the first 15 *496 months, except that Certificates may be redeemed at authorized General Motors dealers as provided in this Agreement.

IV. SAFETY RESEARCH PROJECT
1. The purpose of the Research Project is to research, develop and implement feasible and practical means to enhance fuel system safety for motor vehicles, in order to reduce the incidence of injuries and deaths resulting from post-collision fires in existing vehicles and future designs of passenger vehicles, including cars, light duty trucks and other vehicles used for passenger transportation. The research, development and implementation will be directed to enhancing and improving fuel system integrity and reducing or delaying post-collision combustion, prioritizing near term applications. The objective of the Research Project will be to develop and implement successful technology to reduce the incidence of injuries and death resulting from post-collision fuel fed fires in existing and future designs of passenger vehicles. The Research Project will not be directed toward research, development or implementation limited to a particular vehicle or line of vehicles, but shall address fuel system safety in a manner applicable to vehicle fuel system safety generally.
2. GM is willing to fund the Research Project to promote independent research to enhance fuel system safety for motor vehicles generally as described above. The Research Project is part of the settlement of the claims asserted in the Litigation, which does not resolve any existing or future personal injury or wrongful death actions against GM, and GM continues to deny any liability whatsoever with respect to the allegations in this Litigation and in other existing and any potential litigation involving C/K Pickup Trucks. To assure that the Research Project pursues the mission set forth above, the Research Project shall not in any way involve vehicles (including the components of vehicles) more than 5 years old. Subject to the forgoing restrictions, any advances in motor vehicle fire safety generally resulting from the Research Project may provide potential benefits to owners of C/K Pickup Trucks, as well as other vehicles, but the Research Project itself shall not involve vehicles (including the components of vehicles) more than 5 years old.
3. The Research Project shall be conducted under the auspices of an independent Trustee selected by CLASS COUNSEL with the consent of GM's counsel and approved by the Court. The Trustee shall be an engineer or scientist with expertise in automotive engineering and research or fire suppression technologies who is not an attorney. The Trustee shall not be an individual retained or employed by any consumer advocacy group, any plaintiffs' or defense attorneys or General Motors and/or its grantees. Plaintiffs' counsel have recommended that Kennerly Digges, Phd. be appointed as Trustee, and GM has consented. Mr. Digges will serve as the Trustee, subject to Court approval.
4. The Trustee will have the responsibility to oversee the Research Project, including the responsibility to solicit, identify and select research, testing and implementation projects, administer the funds provided, require written reports, and to arrange for publication or other dissemination of the Research Project results to class members, researchers, engineers and scientists. The Research Project funds shall not be awarded to any individual or entity retained or employed by any consumer advocacy group, any insurance organization, any attorneys or General Motors without the consent of General Motors and CLASS COUNSEL, which consent will not unreasonably be withheld. The Trustee will inform CLASS COUNSEL and GM counsel of the research, testing and implementation projects selected. GM will not in any way discourage researchers or research facilities from doing any work authorized by the Trustee under this Agreement. CLASS COUNSEL or GM may only object to research, testing and implementation projects selected which do not comply with this Agreement. Any such objections shall be submitted to the Trustee within 15 days from receipt of notice of the project. Review of the Trustees decision may be sought from the Court within 10 days thereafter. The Court's decision will be final and shall be followed by the Trustee.
*497 5. The Research Project, including the Trustee's fee, shall be funded following the effective date of settlement by General Motors payment of a total of $4.1 million paid in equal annual installments for a period of 3 years. If, in the discretion of the Trustee, the progress of the research, testing and implementation justifies acceleration of the payments, the Trustee may require, and General Motors will pay, up to one half of the total of the three payments per annum in the first and/or second year of the project. In no event shall General Motors' obligation to the fund the Research Project and compensation for the Trustee exceed a total of $4.1 million. The Trustee shall be compensated at a reasonable hourly rate for actual time expended toward the Research Project and reasonable expenses. Compensation and reimbursement of fees and expenses of the Trustee are subject to the above limitations and shall be paid from the fund. Any dispute over the Trustee's compensation shall be submitted to the Court for final determination. The parties will apply to the Court for an order granting the Trustee and any recipient of Research Project funding judicial immunity from any actions relating to the Research Project or the results thereof, including, but not limited to, any applications and benefits thereof.

V. DENIAL OF WRONGDOING OR LIABILITY
This Agreement is for settlement purposes only, and neither the fact of, nor any provision contained in, this Agreement nor any action taken hereunder shall constitute, or be construed as, any admission of the validity of any claim or any fact alleged by Plaintiffs in the Litigation or of any wrongdoing, fault, violation of law, or liability of any kind on the part of General Motors or any admission by General Motors of any claim or allegation made in any action or proceeding against General Motors. This Agreement shall not be offered or be admissible in evidence against General Motors or cited or referred to in any action or proceeding, except in any action or proceeding brought by or against Plaintiffs, SETTLEMENT CLASS members, or General Motors to enforce its terms, or by General Motors in defense of any claims brought by SETTLEMENT CLASS members covered by this Agreement.

VI. CERTIFICATION FOR SETTLEMENT PURPOSES ONLY
Subject to Court approval, it is agreed by the parties that the Litigation will be deemed, for the purpose of settlement only, to be certified as a class action under Louisiana Code of Civil Procedure, and the persons or entities defined in Section II.(k) of this Agreement shall be deemed to constitute the SETTLEMENT CLASS on behalf of which the Litigation is settled. Any certification pursuant to this paragraph shall not constitute, in this or any other proceeding, an admission by General Motors or a finding or evidence that any requirement for class certification is otherwise satisfied in the Litigation, except for the limited purposes related to this Agreement.

VII. APPROVAL OF SETTLEMENT
1. Plaintiffs' Counsel and General Motors Counsel shall present this Agreement to the Court on or before July 3, 1996, along with a Motion for Certification of a Settlement Class, Preliminary Approval of Settlement and Authorization to Disseminate Notice to the Class, in the form attached hereto as Exhibit A, and shall take all appropriate steps to obtain an Order, substantially in the form attached hereto as Exhibit B, (a) finding the settlement sufficiently fair, reasonable, and adequate to allow Notice to be disseminated to members of the SETTLEMENT CLASS; (b) certifying the SETTLEMENT CLASS as provided in this Agreement; (c) approving Notice by mail and publication substantially in the forms attached hereto as Exhibits C and D; (d) scheduling a hearing on the fairness of the proposed settlement; and (e) appointing CLASS COUNSEL.
2. Notice shall be disseminated as directed in that Order (Exhibit B) as follows:
(a) Summary Notice of the proposed settlement (Exhibit C) shall be published once in all editions of USA Today distributed in the United States.
*498 (b) The mailing of the Notice under this Agreement to the SETTLEMENT CLASS members shall be accomplished by delivery of copies of the Notice, addressed to all SETTLEMENT CLASS members whose addresses are found in vehicle registration records maintained by R.L. Polk & Co. or other similar entity as of 12:01 AM, July 4, 1996, to the United States Post Office for first class mailing with postage prepaid. Such Notices shall bear the return address of the Post Office Box described in Paragraph X.1.
(c) General Motors shall have the sole responsibility for paying for the published and mailed Notice to the SETTLEMENT CLASS provided by Paragraph VII.2(a) and (b).
(d) The Notices shall be printed and mailed by entities selected by General Motors. CLASS COUNSEL may object to any entity selected by General Motors to print and mail the Notice. Any dispute regarding the entities selected to print and mail the Notice shall be resolved by the Court, provided that a replacement entity [or entities] shall not be selected if it will charge any amount greater than General Motors would have incurred with the entities it selected for printing and mailing of the Notices.
(e) It shall be the responsibility of CLASS COUNSEL to respond to all inquiries from the SETTLEMENT CLASS members as appropriate.
3. Subject to Court approval, any SETTLEMENT CLASS member who intends to request exclusion from the SETTLEMENT CLASS or to object to the fairness of the proposed settlement (hereinafter "requests for exclusion" and "objections to the settlement") must mail any such request for exclusion or objection to the settlement in writing postmarked within forty-five (45) days of the initial mailing of the Notice pursuant to Paragraph VII.2(b). Requests for exclusion shall be mailed to CLASS COUNSEL, and objections to the settlement are to be mailed to the Clerk of the Court, at the addresses set forth in the mailed Notices, with copies to CLASS COUNSEL and counsel for General Motors. Persons requesting exclusion and objectors to the settlement must set forth their full name and current address and list the make, model year, and vehicle identification number (printed on the envelope/notice) of their vehicle or vehicles. Objectors to the settlement must state in writing all objections and the reasons therefor, and shall include any and all supporting papers, including proof of ownership as of 12:01 AM, July 4, 1996, of a GM PICKUP TRUCK, and, if applicable, the objector's statement of intent to appear at the fairness hearing. Any SETTLEMENT CLASS member who does not file timely written objections to the settlement and notice of his or her or its intent to appear at the fairness hearing pursuant to this paragraph and the Notice shall not be permitted to object to the settlement at the fairness hearing, and shall be foreclosed from seeking review of the settlement by appeal or otherwise.
4. Following final approval by the Court of this Agreement and the settlement contemplated hereby, the parties shall seek entry of an Order in the form annexed hereto as Exhibit E, dismissing with prejudice and without further costs the Petition, any and all other complaints in the Litigation, and all claims which any SETTLEMENT CLASS members alleged or could have alleged in any way relating to the FUEL SYSTEM DESIGN of the GM PICKUP TRUCKS, excluding only claims for personal injury, death or physical damage to property that have resulted or may result from vehicle fires or crashes.
5. Following entry by the Court of the Final Order and Judgment provided for in Paragraph VII.4 of this Agreement, no default by any person other than General Motors in the performance of any covenant or any obligation under this Agreement or any order or judgment entered in connection therewith shall affect the dismissal of the Litigation, the discharge of General Motors, or any other provisions of Paragraph VII.4.
6. If (i) the preliminary or final approval of the Agreement and the settlement described herein is not obtained or is reversed on appeal or (ii) the EFFECTIVE DATE of settlement as defined herein does not occur for any reason or (iii) entry of the Final *499 Order and Judgment described in Paragraph VII.4 is finally reversed or (iv) the judgment is substantially modified by the Court, or on appeal, and either CLASS COUNSEL or General Motors so elects, this Agreement shall be null and void, shall have no further force and effect with respect to any party in this Litigation, and shall not be offered in evidence or used in the Litigation for any purpose, including the existence, certification or maintenance of any purported class. In such event, the Agreement and all negotiations, proceedings, documents prepared and statements made in connection herewith shall be without prejudice to General Motors and plaintiffs, shall not be deemed or construed to be an admission or confession by any party of any fact, matter, or proposition of law, and shall not be used in any manner for any purpose, and all parties to the Litigation shall stand in the same position as if this Agreement had not been negotiated, made, or filed with the Court. In such event, General Motors may elect to move the Court to vacate any and all orders entered by the Court pursuant to the provisions of this Agreement. General Motors expressly reserves the right to pursue an appeal of the order certifying a Louisiana litigation class previously entered by the Court or any class subsequently certified including all issues previously appealed. CLASS COUNSEL expressly reserve the right to oppose General Motors appeal and to seek certification of the class as stated in Plaintiffs' Motion for Class Certification and any amendments thereto, and/or to seek approval of the trial court to alter or amend the class definition proposed in this Agreement.
7. Thirty days following the EFFECTIVE DATE OF SETTLEMENT, the entity or entities selected to print and mail the Notice pursuant to paragraph VII.2(d) of this Agreement shall print and mail a final notice to each SETTLEMENT CLASS member in writing, at General Motors expense stating (i) that the Court has given final approval to this Agreement of Settlement and (ii) explaining the procedure and providing Proof of Claim forms for SETTLEMENT CLASS members to obtain Certificates. The form and content of this Notice shall be subject to court review and approval at the request of either General Motors' Counsel or CLASS COUNSEL.
8. CLASS COUNSEL and General Motors shall use their best efforts to obtain Court authorization to disseminate Notice of this Agreement within 14 days after the date of execution of this Agreement. General Motors and CLASS COUNSEL shall use their best efforts to have the Class Notice pursuant to Paragraph VII.2. mailed within 60 days after authorization to disseminate notice is obtained and Summary Notice published within 10 days thereafter. CLASS COUNSEL and counsel for General Motors shall use their best efforts to seek a hearing to obtain final approval of the settlement to be held within sixty-five (65) days following publication of the Notice.

VIII. ATTORNEYS' FEES AND EXPENSES
CLASS COUNSEL may apply to the Court for an award of reasonable attorneys' fees, costs and/or expenses for professional services rendered on behalf of the SETTLEMENT CLASS relating to the claims settled, released and discharged by this Agreement under this paragraph and under paragraph X.2. Following preliminary approval of this Agreement by the Court pursuant to paragraph VII., CLASS COUNSEL and General Motors shall negotiate the maximum amount of reasonable attorneys' fees, costs and/or expenses that may be requested by each group of CLASS COUNSEL, subject to reasonable documentation and approval of the Court. In the event that limits on the amount of attorneys' fees, costs and/or expenses that may be requested under this paragraph and paragraph X.2. cannot be negotiated within 40 days following preliminary approval by the Court of this Agreement, General Motors may elect to withdraw from this Agreement and this Agreement and any actions taken pursuant thereto shall be null and void, shall have no further force and effect with respect to any party in this Litigation, and shall not be offered in evidence or used in the Litigation for any purpose, including the existence, certification or maintenance *500 of any purported class. In such event, the Agreement and all negotiations, proceedings, documents prepared and statements made in connection herewith shall be without prejudice to General Motors and plaintiffs, shall not be deemed or construed to be an admission or confession by any party of any fact, matter, or proposition of law, and shall not be used in any manner for any purpose, and all parties to the Litigation shall stand in the same position as if this Agreement had not been negotiated, made, or filed with the Court. In such event, General Motors may elect to move the Court to vacate any and all orders entered by the Court pursuant to the provisions of this Agreement. General Motors expressly reserves the right to pursue an appeal of the order certifying a Louisiana litigation class previously entered by the Court or any class subsequently certified, including all issues previously appealed. CLASS COUNSEL expressly reserve the right to oppose General Motors appeal and to seek certification of the class as stated in Plaintiffs' Motion for Class Certification and any amendments thereto, and/or to seek approval of the trial court to alter or amend the class definition proposed in this Agreement. An election to withdraw shall be deemed immediately effective if given in writing by General Motors to CLASS COUNSEL. The negotiated limits on the amount of attorneys' fees, costs and/or expenses shall be disclosed in the Notice (Exhibit D). In no event shall General Motors be obligated to pay any attorneys' fees, cost and/or expenses that may be sought by any or all counsel that have represented the SETTLEMENT CLASS in excess of the negotiated limits. General Motors shall have the right and shall have standing to object to any request for attorneys' fees, costs and/or expenses that it considers excessive and may appeal from any excessive award of attorneys' fees, costs and/or expenses. The amount of attorneys' fees, costs and/or expenses awarded by the Court in accordance with this paragraph shall be paid by General Motors within 14 days following the EFFECTIVE DATE OF SETTLEMENT.

IX. RELEASE AND DISMISSAL OF LITIGATION
Upon the EFFECTIVE DATE OF SETTLEMENT, conditioned upon its continuing performance of all terms and conditions of this Agreement and the Final Order and Judgment, General Motors, its present or former officers, directors, employees, agents, attorneys, heirs, executors, administrators, successors, reorganized successors, assigns, subsidiaries, affiliates, parents, divisions, predecessors, and authorized dealers shall forever be released and discharged from any and all claims, whether legal or equitable in nature, that were brought in the Litigation by any SETTLEMENT CLASS member or which could have been asserted in any federal or state court or in any other proceeding by any SETTLEMENT CLASS member (except as to such a member who has filed a proper and timely request for exclusion from the SETTLEMENT CLASS) arising out of, or in any way relating to the FUEL SYSTEM of the GM PICKUP TRUCKS, excluding past, present, and future claims for damages arising out of any vehicle fires or crashes that result in personal injury, death or physical damage to property.
As soon as reasonably practicable following the entry of an Order granting the Motion for Certification of a Settlement Class, Preliminary Approval of Settlement and Authorization to Disseminate Notice to the Class, CLASS COUNSEL and any other attorneys who intend to submit applications for attorneys' fees, costs and/or expenses under this Agreement shall take all steps necessary to obtain stays of proceeding in all other litigation pending in which CLASS COUNSEL or such other attorneys are involved that involves any claims that will be released and/or discharged as a result of final court approval of this Agreement of Settlement. As soon as reasonably practicable following the EFFECTIVE DATE OF SETTLEMENT, CLASS COUNSEL and any attorneys who submit applications for attorneys' fees, costs and/or expenses shall take all appropriate steps to obtain dismissals with prejudice as to all SETTLEMENT CLASS Members of any and all litigation that involves any claims released and/or discharged *501 as a result of final court approval of this Agreement of Settlement.

X. ADMINISTRATION
1. CLASS COUNSEL shall be responsible for obtaining a United States Post Office Box, for the purpose of receiving requests for exclusion and objections that are submitted in accordance with Exhibit B and D to this Agreement, as well as any other written documents or inquiries submitted by SETTLEMENT CLASS members. CLASS COUNSEL shall make those materials available to the Court, counsel for General Motors and any member of the SETTLEMENT CLASS who makes a request for inspection, and shall report to the Court about the quantity and nature of the materials received, excluding any information protected by the attorney client privilege.
2. CLASS COUNSEL shall be entitled to seek reimbursement at CLASS COUNSEL's customary hourly rates for attorneys' fees and for actual costs and expenses for services rendered in relation to SETTLEMENT CLASS notice and administration subsequent to the Court's entry of an Order preliminarily approving this Agreement, conditionally certifying the SETTLEMENT CLASS and authorizing dissemination of the initial class notice pursuant to Section VI(1). Reimbursement for these attorneys' fees, costs and/or expenses shall be subject to Court approval and payable by General Motors as soon as reasonably practicable following the EFFECTIVE DATE OF SETTLEMENT.

XI. MISCELLANEOUS
1. This Agreement and its attachments shall constitute the entire Agreement of the parties and shall not be subject to any change, modification, amendment, or addition without the express written consent of counsel on behalf of all parties to the Agreement.
2. This Agreement shall be binding upon and inure to the benefit of the parties hereof and their representative, heirs, successors, and assigns.
3. In the event any one or more of the provisions contained in this Agreement shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision if General Motors and CLASS COUNSEL, on behalf of the parties, mutually elect to proceed as if such invalid, illegal, or unenforceable provision had never been included in this Agreement.
4. The Court shall retain continuing and exclusive jurisdiction over the parties hereto, including all members of the SETTLEMENT CLASS, and over the administration and enforcement of the Settlement and the benefits to the SETTLEMENT CLASS hereunder. Any disputes or controversies arising with respect to the interpretation, enforcement, or implementation of the settlement must be made by motion to the Court.
5. This Agreement may be executed in counterpart by the parties hereto, and a facsimile signature shall be deemed an original signature for purposes of this Agreement.
6. This Agreement shall be construed under and governed by the laws of the State of Louisiana.

GENERAL MOTORS CORPORATION
 /s/ Lee A. Schultzman
 Lee A. Shultzman
 CLASS COUNSEL
 /s/Don Barrett
 Don Barrett
 Barrett Law Offices
 On behalf of Plaintiffs and
 their counsel in the Southeast
 States and the proposed
 SETTLEMENT CLASS
 /s/ Patrick W. Pendley
 Patrick W. Pendley
 A PROFESSIONAL LAW CORPORATION
 On behalf of Plaintiffs and
 their counsel in the Southeast
 States and the proposed
 SETTLEMENT CLASS
 /s/ Richard M. Heimann
 Richard M. Heimann
 Lieff, Cabraser, Heimann &
 Bernstein
 /s/ Dianne M. Nast
 Dianne M. Nast
 RODA & NAST, P.C.
*502
 On behalf of Plaintiffs and
 their counsel in MDL 961
 and the proposed
 SETTLEMENT CLASS
 /s/ Timothy J. Crowley
 Timothy J. Crowly
 CROWLEY, MARKS & DOUGLAS
 /s/ Sam F. Baxter
 SAM F. BAXTER
 McKOOL SMITH
 On behalf of Plaintiffs and
 their counsel in Dollar, et al.
 v. General Motors Corp. and
 the proposed
 SETTLEMENT CLASS
 APPENDIX B
 18th Judicial District Court
 Parish of Iberville
 State of Louisiana
 Joseph A. White, III, John L. Monson
 and Anthonu O. Cashiola, Sr.
 Versus
 General Motors Corporation,
 Brockhoeft's Chevrolet, Inc.
 and Hanks Pontiac-GMC-Buick, Inc.
 Number: 42,865 Division "D"

FINAL ORDER AND JUDGMENT

A. FAIRNESS, REASONABLENESS AND ADEQUACY
Before the Court is the Agreement of Settlement dated June 27, 1996 ("Settlement") between defendant General Motors Corporation ("GM") and representatives of a class consisting of all owners of 1973 through 1986 model year GM full-size pickup trucks and chassis cab models of the "C" or "K" series, and of 1987 through 1991 model year GM full-size pickup trucks and chassis cab models of the "R" or "V" series, for consideration of final certification of the conditionally certified settlement class, and the fairness, reasonableness, and adequacy of the Settlement. This Court has jurisdiction to consider these issues pursuant to Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985) and Matsushita Electric Industrial Co., Ltd. v. Epstein, 516 U.S. 367, 116 S.Ct. 873, 134 L.Ed.2d 6 (1996).
After having considered the Settlement, including accompanying exhibits, the affidavits, documents and other evidence submitted by the parties and others in support of the Settlement and by objectors against the approval of the Settlement; the Class Action Settlement Notice ("Notice") having been given in accordance with the Court's July 3, 1996 Order; having heard argument and having been presented with evidence at the Fairness Hearing in support of and in opposition to the Settlement; having considered all objections to the Settlement; and based on all papers filed and proceedings had herein; the Court finds as follows:
(1) APPLICABLE CLASS CERTIFICATION REQUIREMENTS ARE SATISFIED
The conditional certification of the Settlement Class by the Order of July 3, 1996, is hereby confirmed, and the Settlement Class is certified pursuant to La.Code Civ.P. art. 591-597 for purposes of this settlement only for the reasons set forth below. Having demonstrated numerosity, adequacy of representation, and common character of the right asserted in the Fifth Amending and Supplemental Petition, this Court finds that the Settlement Class meets the prerequisites for class certification for purposes of these proceedings. La.Code Civ.P. arts. 591, 594. The Settlement Class is defined as:
All persons and entities who purchased in the United States (except the United States government) and are owners as of 12:01 A.M., July 4, 1996, of any of the following vehicles:
(i) 1973 through 1986 model year General Motors full-size pickup trucks or chassis cab models of the "C" or "K" series. These include the following models: Chevrolet C10, C20, C30, K10, K20, K30 and GMC Truck C1500, C2500, C3500, K1500, K2500, K3500;
(ii) 1987 through 1991 model year General Motors full-size pickup trucks or chassis cab models of the "R" or "V" series. These include the following models: Chevrolet R10, R20, R30, R2500, *503 R3500, V10, V20, V30, V2500, V3500 and GMC Truck R1500, R2500, R3500, V1500, V2500, and V3500.
Vehicles that have been scrapped as of 12:01 A.M., July 4, 1996, are not included.
These pickup trucks and chassis cabs ("C/K Truck(s)") are all equipped with fuel tank(s) mounted outside the frame rails.

(a.) Numerosity
The Settlement Class consists of owners of close to six million C/K Trucks throughout the United States. The Court is satisfied that it would be impracticable to join the claims of these class members, rendering La.Code Civ.P. art. 591's numerosity requirement satisfied.

(b.) Adequacy of Representation
The Settlement Class is composed of three subclasses: a Consumer subclass, a Fleet subclass and a Governmental Entity subclass. Joseph A. White, III and Wilbert Cole are representatives of the Consumer subclass and are each owners of a C/K Truck. The Court is satisfied that Mr. White and Mr. Cole are members of the Consumer subclass, have adequately familiarized themselves with the issues in the case and the Settlement, and have retained experienced and competent counsel to represent the Consumer subclass. Therefore, the Court finds that Mr. White and Mr. Cole are adequate representatives of the Consumer subclass.
King Landscaping & Sod of SW Fl, Inc. is the owner of three C/K Trucks. It is the representative of the Fleet subclass. The Court is satisfied that King Landscaping & Sod of SW Fl, Inc. is a member of the Fleet subclass, and through its owner, Scott E. King, has adequately familiarized itself with the issues in the case and Settlement and has retained experienced and competent counsel to represent the Fleet subclass. The Court is satisfied that King Landscaping & Sod of SW Fl, Inc. is an adequate representative of the Fleet subclass.
Jefferson Parish is a governmental entity in the State of Louisiana and is the representative of the Governmental Entity subclass. Jefferson Parish is one of the largest parishes in the State of Louisiana and owns a large number of C/K Trucks. Jefferson Parish is represented by Parish counsel, Hans J. Liljeberg, and through counsel, has adequately familiarized itself with the issues in the case and the Settlement and has also retained experienced and competent counsel to represent the Governmental Entity subclass. The Court is satisfied that Jefferson Parish is an adequate representative of the Governmental Entity subclass.

(c.) Common Character of the Right Asserted
On May 17, 1993, this Court certified a statewide class of owners of C/K Trucks in this case, asserting claims on behalf of Louisiana residents virtually identical to those now asserted on behalf of a nationwide class. The Court at that time determined that the allegation that the outside the frame tanks on C/K Trucks were defective was sufficient to meet Louisiana's common character requirement. GM contested that finding and appealed. Nonetheless, the Court is satisfied that any dispute over the propriety of the certification of a nationwide class should be resolved in favor of certifying the Settlement Class. A Court may certify a class for settlement purposes even where it could not certify the same class for litigation purposes. In re: Beef Industry Antitrust Litigation, 607 F.2d 167 (5th Cir.1979), cert. den'd, 452 U.S. 905, 101 S.Ct. 3029, 69 L.Ed.2d 405 (1981). Because these claims are being resolved by virtue of the Settlement, issues of differences in the design of the C/K Trucks, different applicable laws, prescription, and other issues that GM may argue prevent certification of a national class for trial purposes will not need to be decided. On the contrary, a predominant common issue now is whether the Settlement is a fair, reasonable and adequate compromise of class members' claims. Consequently, the Court is persuaded that the Settlement should be considered in determining whether the class should be certified. In re: Asbestos Litigation, 90 F.3d 963 (5th Cir.1996); Dunk v. Ford Motor Co., 48 Cal. App.4th 1794, 56 Cal.Rptr.2d 483 (4th Dist. 1996). Therefore, based on this Court's prior May 17, 1993 ruling, the evidence submitted *504 in support of the Settlement and the Settlement itself, the Court finds that the common character requirement is satisfied.

(d.) Notice
Pursuant to this Court's July 3, 1996 Order, individual class notices, approved by the Court, were mailed by GM to approximately 5.8 million class members. GM also caused the Summary Notice, also approved by the Court, to be published on September 13, 1996, at GM's expense, once in all editions of USA Today. The Court determines that this dissemination of class notice satisfies the due process requirements set forth in Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985), as well as Louisiana's class notice requirements. Williams v. State, 350 So.2d 131 (La.1977); Ellis v. Georgia-Pacific Corp., 550 So.2d 1310 (La.App. 1st Cir.1989), writ den'd, 559 So.2d 121 (La.1990).
(2.) APPLICABLE FAIRNESS CRITERIA SATISFIED
This Court finds that the Settlement is fair, reasonable, and adequate for all members of the Settlement Class, and the Court approves the settlement pursuant to La.Code Civ. P. art. 594 upon review of the following factors: (1) in the absence of settlement, the plaintiffs faced potential factual and legal obstacles to prevailing on the merits of their claims; (2) the likelihood of recovering money damages was uncertain, and the reasonably expected minimum recovery available to plaintiffs through settlement is well within the range of possible recovery; (3) the advanced stage of the proceedings and the extensive discovery taken in the actions concerning the C/K Trucks is sufficient for Class Counsel to adequately assess the strength of the claims and the range of possible recovery; (4) even if successful on the merits, any relief afforded class members through litigation may take years to obtain due to the complexity of the factual and legal issues and the likelihood of multiple appeals; (5) only a minute percentage of the Settlement Class objected to the Settlement, reflecting general assent by the class to the terms of the Settlement; and (6) there is no evidence before the Court that the Settlement was the product of collusion or fraud. Therefore, the Settlement is approved as fair, reasonable and adequate.

(a.) There are Substantial Factual and Legal Obstacles to Prevailing on the Merits
If this case were not settled, plaintiffs would contend, inter alia, that the C/K Trucks encompassed within the class definition are inherently defective as a result of the location of the fuel tanks outside of the frame rails. Plaintiffs assert in their Fifth Supplemental and Amending Petition and would contend at trial that this "side-saddle" fuel tank placement resulted in an increased risk of harm to truck occupants in the case of low to medium impact side collisions, and that GM was aware of this risk. Plaintiffs further contend that this defect subjected GM to liability to the owners of approximately 5.8 million trucks for breach of warranty and other damages.
Conversely, if this case were tried, GM would contend and has presented substantial evidence in an attempt to show, inter alia, that: (1) the design of the fuel system on the C/K Truck is consistent with many other vehicle models that have been designed with side located fuel tanks; (2) there is evidence that the C/K Trucks met federal safety standards; (3) in dozens of tests by GM, other car manufacturers, and the Department of Transportation, the C/K Trucks consistently satisfied, and even surpassed Federal Motor Vehicle Safety Standard 301, which is the federal safety standard on fuel system integrity; (4) real world accident statistics demonstrate that the rate of postcollision fires for the C/K Trucks is indistinguishable from the rates of other full-sized pickup trucks and better than most other vehicles; and (5) more than three hundred other vehicle models have higher fatal side impact rates than C/K Trucks, and as compared to the average passenger car in side impacts, the C/K Truck's fatality rate is less than half.
With respect to legal issues, GM would contend that numerous legal obstacles likely *505 would prevent recovery on the class claims. GM contends, inter alia, that the applicable prescriptive periods and statutes of limitations would likely bar most claims regarding the C/K Trucks which were from five to twenty years old when the Petition was filed; that prescriptive periods or statutes of limitations began to run, at the latest, on the date an alleged defect was or reasonably should have been discovered; and that because the location of the fuel tanks on C/K Trucks is open and obvious and was regularly disclosed by GM, prescription may have commenced upon or shortly after each original owner's purchase of a C/K Truck.
GM would further contend that none of the plaintiffs' C/K Trucks have manifested the alleged defect, making any recovery on their product liability and warranty based claims dubious, in that many courts have held that the malfunction of a product is an essential element in a product liability suit premised on negligence or strict liability, and a prerequisite for breach of warranty.
GM would further contend that plaintiffs' warranty claims are suspect due to the limited duration of the C/K Truck's warranty and lack of vertical privity between many plaintiffs and GM. For the class period, GM contends that its written warranty specifically limited the duration of all written and implied warranties to the earlier of 12 months or 12,000 miles from the date of first purchase, and that the lack of vertical privity for all owners of C/K Trucks who purchased their trucks from independent dealers or other third parties, bars breach of implied warranty claims in many states.
GM would further contend that there is a strong potential that the tort claims of the settlement class are barred due to the rule precluding recovery in tort for solely economic losses. Plaintiffs' alleged losses do not include personal injury or property damage; instead, they include the economic costs of repairing their trucks and/or diminution in value. GM would argue that these economic losses are not recoverable in the majority of states for product liability, negligence, and other tort claims.
The Court credits the evidence submitted by the parties and concludes that there are significant obstacles to the class ultimately prevailing on the claims. This factor weighs strongly in approval of the Settlement.

(b.) Range of Recovery as Compared to Settlement Benefits
GM contends and plaintiffs have recognized that their ability to prove the amount of damages is uncertain. Given the factual and legal hurdles  including the design, testing, field performance record, the legal defenses, the likelihood of time bar defenses to plaintiffs' claims, the speculative nature of any relief due to the lack of diminution in resale value of these trucks, and the difficulty in proving the cost of repair  the Settlement falls within the range of possible recovery.

(i.) Range of Recovery
The C/K Trucks in the Settlement Class have not been involved in accidents. There are no claims for personal injuries or physical damage to property being made in this litigation or being released by this Settlement. Even if the Court were to assume that the C/K Trucks had the alleged defect, there has been no evidence presented in any hearing before the Court or in any papers filed with the Court, of a feasible, practical "fix" that has been developed and adequately tested that would enhance safety, even though the class actions have been pending for as long as four years. No retrofit is presently available where, as here, there is no proof that any retrofit would improve the safety of the C/K Trucks, and where a retrofit could likely make these old trucks less safe. The Court is not equipped with the technical expertise and other resources to require any party to develop and test a "fix" and has not determined that one would be required. The absence of any authority in any state or federal jurisprudence to require such action persuades the Court that it should be given little weight in evaluating the fairness of the Settlement.
Courts are not equipped to decide whether and how to fix allegedly defective products. The appropriate venue for such decisions is *506 the National Highway Traffic Safety Administration ("NHTSA") or other administrative agencies with the budget, staffing, technical expertise and legislative mandate. Indeed, as of the date of execution of this Settlement, NHTSA had concluded its investigation into the issue of whether to recall these C/K Trucks, and NHTSA no longer challenges GM's position that these trucks comply with applicable safety standards. Consequently, the more appropriate relief for successfully tried claims in this litigation would be money damages. But, even money damages might be difficult to establish since the evidence presented to the Court fails to show a decrease in the resale value of these trucks relative to competitor models. On the contrary, it shows that the C/K Trucks have higher retained value as a percentage of the original retail cost than do their closest competitors. Consequently, the cost of a retrofit may be the best, if not only, appropriate measure of damages arising from the primary claim of breach of warranty.
With regard to the cost of retrofit, the Court notes the Center for Auto Safety's statement to the Wall Street Journal to the effect that a retrofit safety enhancement could be developed, manufactured and sold for approximately $65. Further, the Court notes the presence at the Fairness Hearing of Brian Wolfman, an attorney for Center for Auto Safety and Public Citizen, and his statement in support of the settlement. On the other hand, since no retrofit has been proposed, the Court acknowledges the speculative nature of the above repair estimate, but has no other economically practical estimate to consider. Because this Court is satisfied, as is more fully set forth below, that the certificates should yield a minimum cash value of $100, each Consumer, Fleet, or Governmental Entity which files a Proof of Claim should at a minimum be able to receive an amount equivalent to or greater than the most probable value of a warranty claim in any state. These factors militate in favor of settlement, particularly when viewed in light of the substantial benefits afforded by this Settlement.

(ii.) Substantial Settlement Benefits
The Court finds that the Settlement offers substantial value to all Settlement Class members without the expense, delay and uncertainty that would result from further litigation. These benefits include, inter alia: (1) the receipt of a $1,000 certificate good toward the purchase of a wide variety of GM vehicles; (2) the division of the Settlement Class into three subclasses, with the Consumer subclass members able to use the certificates for a 33-month redemption period, and the Fleet and Governmental Entity subclass members able to do so within a 50-month redemption period; (3) the funding by GM of a Research Project to research, develop and implement feasible and practical means to enhance fuel system safety; and (4) significant opportunity for certificate transfer, which transferability, as well as the estimated $100.00 value of the certificate as a result of transfer, was supported by evidence presented at the Fairness Hearing which included: (a) the affidavit of Kenneth Boudreaux, Ph.D., a Professor at Tulane University and an expert well known to this Court whose opinion is given substantial weight; and (b) the Barrett Group's willingness to accept certificates in lieu of cash for fees and costs which was both novel and significant.
Additionally, an offer was made by the Certificate Redemption Group, through William Ryan and with the prospective involvement of Bank One, to purchase all certificates tendered within the first 75 days of the issuance of the final notice for $100, as set forth in the affidavit of Mr. Ryan and exhibits attached thereto. This offer, however, is an executory contract with many conditions. Although the Court has no reason to suggest a lack of sincerity or ability by Mr. Ryan's group or Bank One to honor its contract, this Court gives little weight to this offer. However, the Court does feel, based upon Professor Boudreaux's opinion, this Court's experience and common sense principles, that Mr. Ryan's offer is indicative of the market that will evolve.
Because of the objections by some class members that they can only benefit from this Settlement by purchasing a new vehicle which they cannot afford, and related criticisms *507 of the previous settlement, the Court was extremely focused on the importance of transferability of certificates. The Court concludes, after a thorough examination of all evidence in the record, that the certificates will be freely transferable, which transferability, combined with market forces, will facilitate the creation of a secondary market and should yield an estimated minimum value per certificate of $100.00.
With respect to those objections which suggest that the current settlement is a marketing scheme by GM, the Court concludes that the relevant issue is not the benefit to, detriment to, or punishment of GM, but the benefit to the class. Although the Court does not believe this settlement to be a marketing scheme, if by GM selling more cars and trucks the class can benefit more, the benefit to the class is more important, and is a substantial factor in this Court's approval of this Settlement.

(c.) Stage of the Proceedings
Class Counsel have had a full opportunity to evaluate their case and assess the strengths and weaknesses of the claims. They have had discovery of hundreds of thousands of pages regarding GM design, testing and other documents relating to the C/K Truck fuel system; all available deposition testimony from prior C/K product liability cases; written submissions by GM to NHTSA; NHTSA's extensive information requests and follow up inquiries; and the trial records in personal injury actions challenging the design of the C/K Trucks. Numerous depositions of GM witnesses have been taken. Interrogatories, document discovery and depositions have been taken of almost fifty class members.
The discovery conducted by Class Counsel in the class actions supports this Court's conclusion that this Settlement was negotiated based on a realistic assessment of the merits of the claims.

(d.) Complexity, Expense and Likely Duration of Remaining Litigation
The issues raised in plaintiffs' Fifth Amending and Supplemental Petition involve considerable complexity. Class action litigation has been pending for almost four years, and litigating this case to a judgment on the merits would be very expensive and tremendously time consuming. The parties' experts would have to complete costly analysis and be deposed on a variety of complex issues, such as fuel system design and performance, vehicular crash worthiness, analysis of field accident statistics, and C/K Truck and competitive vehicle value, among other things. In the end, dispositive motions would be likely and there would be no certainty as to the time of a future trial date.
At trial, evaluating plaintiffs' claims of vehicle defect would necessarily involve a large amount of technical evidence and extensive expert testimony. Not only would the trial itself be complex, lengthy, and expensive, but it almost certainly would be followed by appeals, a factor which this Court finds supports settlement approval.

(e.) Opinions of the Participants
In approving this Settlement, the Court gives considerable weight to the opinions of the class members and counsel who participated in this and the other class actions. These opinions overwhelmingly support approval of the Settlement as a fair, reasonable and adequate compromise of the class claims. Indeed, the combined total of class members who either objected to or excluded themselves from the Settlement was well below one tenth of one percent of the class. Fewer than one third of the number of objections were submitted in response to this Settlement compared to a previous settlement submitted to the MDL in Philadelphia and to the Texas State Court in October and November of 1993, respectively. The vast majority of objectors to the prior settlement either support this settlement or have not objected. Governmental Entities owning considerable numbers of C/K Trucks that opposed the prior settlement support this one. In particular, the City of New York, the State of New York, the Pennsylvania Department of Transportation and the Parish of Jefferson, who were the only previous Governmental objectors who appealed, now support the settlement. Indeed, Jefferson Parish, a prior *508 objector/appellant, is a subclass representative now and spoke in favor of the present Settlement at the Fairness Hearing. Even the safety advocates, i.e. Center for Auto Safety and Public Citizen, which were vocal critics of the previous settlement, have spoken in favor of this Settlement. The reaction of the class, therefore, weighs strongly in favor of settlement approval.
The Court has reviewed all objections submitted by class members, whether in writing or by way of oral argument or evidence submitted at the Fairness Hearing. Based on this Court's review of the objections, the Court finds that these objections do not provide a sufficient basis to overcome the strong showing by Class Counsel, GM and others that the Settlement is fair, reasonable and adequate.
While a number of issues were raised by the objectors and considered by this Court, one of the principal arguments advanced by objectors focused on the claim that the Settlement that the parties now ask this Court to approve is identical or at least substantially similar to that previously rejected by the Third Circuit Court of Appeal. However, substantial evidence was presented at the Fairness Hearing which established that the present Settlement and that previously submitted to the MDL for approval are significantly different in a number of material respects, including, but not limited to: the duration of the redemption periods; the creation of subclasses; the expansion of the class of vehicles for which the certificates may be used; and the increased transferability of the certificates in an effort to facilitate class members' ability to obtain a cash benefit. Consequently, the Court finds that these two Settlements are distinct and that each stand on its own with respect to any fairness analysis.

(f.) Absence of Collusion
The Court is satisfied that the Settlement is the result of active litigation and arms length negotiations, not complicity or collusion. There is no doubt that Class Counsel vigorously litigated the case and that GM strongly asserted its defenses. GM vigorously opposed certification of a class in this case and appealed this Court's prior certification of a statewide litigation class. Further demonstrating the absence of collusion is that only after the Settlement Agreement was preliminarily approved did counsel discuss, negotiate and mediate upper limits on the amounts that could be requested in attorneys' fees and costs. GM retained the right to object and appeal and has filed substantial oppositions to the fee/cost applications. The proper and reasonable amount of attorneys' fees and costs was left to the Court for decision. Consequently, the allegations of collusion by certain objectors are unsupported by any facts.

B. ATTORNEYS' FEES AND EXPENSES
Class Counsel's Joint Petition for Award of Attorneys' Fees, and separate Petitions for Reimbursement of Costs and Expenses by Class Counsel and certain former objectors/intervenors, came on for hearing and approval on November 6, 1996, simultaneously with this Court's consideration of the fairness, reasonableness and adequacy of the Settlement. Having considered the Joint Petition for Attorneys' Fees and all other separate Petitions for Attorneys' Fees and Reimbursement of Costs and Expenses, laving considered the evidence and arguments of all interested parties and any and all objections to the requests for attorneys' fees and costs, and all class members having been given an opportunity to be heard on this matter, the Court hereby finds as follows:
La.Code Civ.P. art. 595 authorizes a court to award representative parties in class litigation "their reasonable expenses of litigation, including attorneys' fees, when as a result of the class action a fund is made available, or a recovery or compromise is had which is beneficial to the class". This Court finds that the June 27, 1996 Settlement creates a beneficial common fund providing substantial benefits to settlement class members, within the purview of art. 595, justifying an award to Class Counsel, as well as certain former objectors/intervenors, for reasonable attorneys' fees and costs. In determining what is a reasonable attorneys' *509 fee, Louisiana courts, as well as numerous federal circuits, employ the "percentage of the fund" approach, as opposed to the "lodestar" approach. Bruno v. City of New Orleans, 639 So.2d 1201 (La.App. 2d Cir.1994); Pillow v. Board of Commissioners, 425 So.2d 1267 (La.App. 2d Cir.1982); Alexander v. Lindsay, 152 So.2d 261, 267 (La.App. 4th Cir.1963); Ellis v. Georgia Pacific Corp., C.A. No. 26,574, 18th JDC.
This Court finds that the evidence presented in connection with the November 6, 1996 hearing was sufficient to establish that the overall estimated minimum cash value of the benefits afforded by the Settlement total in excess of $583 million. This evidence includes the fact that approximately 5.8 million class vehicles are eligible for certificates, coupled with the fact that each certificate should have an estimated minimum cash value of $100, which estimate is supported by the expert opinion of Tulane Professor Kenneth Boudreaux, Ph.D., and the attachments submitted therewith, as well as the offer of the Barrett Group to receive all or a portion of any attorneys' fees awarded in certificates.
A Class Counsel fee award of $24 million has been collectively requested by Don Barrett as Lead Class Counsel, Patrick W. Pendley, and those firms and individuals designated as their Co-Class Counsel ("the Barrett Group"); Dianne M. Nast and Elizabeth J. Cabraser and those firms and individuals designated as their Co-Class Counsel ("the MDL Group"); and Timothy J. Crowley and Sam F. Baxter and those firms and individuals designated as their Co-Class Counsel ("the Texas Group") (hereinafter collectively referred to as the "Class Counsel groups"). In addition, certain objectors/intervenors from the prior MDL and Texas proceedings, referred to as the "Former MDL Objectors" and the "Former Texas Objectors" (hereinafter collectively referred to as "the Former Objector groups"), are seeking awards of fees, costs and expenses. The Former MDL Objectors are seeking fees, costs and expenses of $1.2 million, and the Former Texas Objectors are seeking fees in the amount of $875,000. The collective sum of all requests for attorneys' fees total approximately $26 million, which amount is less than 4.5% of the overall estimated minimum settlement cash value.
This Court finds that the unrefuted evidence before it establishes that there had been no discussion or agreement between GM, the Class Counsel groups, or the Former Objector groups regarding the amounts to be paid by GM in attorneys' fees and costs prior to preliminary approval of this Settlement. The only discussions regarding same did not occur until subsequent to this Court's preliminary approval of the Settlement. These discussions evolved into negotiations and more importantly, formal mediation, before they culminated in agreements as to upper limits to be requested by each Class Counsel and Former Objector group, with GM reserving all rights to object to those requests, which rights GM did in fact exercise.
This Court finds that the upper limits agreed to by the Class Counsel groups and Former Objector groups were fully and adequately disclosed to class members in the court-approved class notice disseminated to all class members. This Court further finds that this notice adequately advised class members of their right to object to these fee and cost requests, either in writing or in person at the fairness hearing, and that no significant evidence or arguments were presented at the November 6, 1996 hearing in opposition to the Class Counsel groups' or the Former Objector groups' requests for attorneys' fees, costs and expenses. In fact, only 68 class members specifically objected to these requests for attorneys' fees, costs and expenses.
The Court further finds that significant and quality work was performed by the Class Counsel groups and the Former Objector groups in connection with this litigation, including extensive discovery and intensive settlement negotiations, which culminated in Class Counsel's ability to achieve the substantial benefits afforded by this Settlement. The Court further finds that the contingency nature of plaintiff class action work, which is the cornerstone of the percentage of the fund approach to awarding attorneys' fees, is a factor to be considered in any class action *510 attorneys' fees/cost analysis, and that the risks inherent in such large-scale contingency class action litigation is best evidenced by the extensive and detailed time records submitted by various Class Counsel groups at the November 6, 1996 hearing. The Court further finds that sufficient unrefuted evidence was submitted to substantiate the amount of costs and expenses incurred by the Barrett Group, the MDL Group, the Texas Group, the Former MDL Objectors and the Former Texas Objectors, and that these costs and expenses were reasonably incurred in connection with the prosecution of this class action litigation.
Based on the foregoing findings, all of the evidence of record, the oral argument of the interested parties at the November 6, 1996 hearing, and after full consideration of all objections to the settlement approval and the present attorneys' fee and cost requests;
IT IS HEREBY ORDERED THAT:
(1) The Settlement Class and subclasses proposed are certified as a class action;
(2) The Settlement is fair, reasonable and adequate and the action is dismissed on the merits with prejudice as to all Settlement Class members who did not request exclusion from the Settlement Class in the time and manner provided in the Notice, without costs to any party;
(3) GM, its present and former officers, directors, employees, agents, attorneys, heirs, executors, administrators, successors, reorganized successors, assigns, subsidiaries, affiliates, parents, divisions, predecessors, and authorized dealers shall be, and the same hereby are, released and discharged from any and all claims, causes of action, and liability whatsoever alleged or asserted or which could have been alleged or asserted in this lawsuit or in any other lawsuit purportedly brought on behalf of Settlement Class members who failed to timely exclude themselves from this Settlement Class, arising out of, or in any way relating to the design, manufacture, assembly, distribution, marketing, sales or service of the fuel system, including, but not limited to, the fuel tanks and all related fuel system designs and components, including fuel lines, fuel pumps, fuel filter neck, fill cap, fuel tank shields, attachment devices, and surrounding structure and components in the C/K Trucks, excluding claims for damages arising out of any vehicle fires or crashes that result in personal injury, death, or damage to property. Nothing contained in the Settlement or the Final Order and Judgment shall be deemed an admission or finding of wrongdoing by, or with respect to, any party;
(4) Within 30 days following the Effective Date of Settlement as defined in the Settlement Agreement, Class Counsel shall notify, at GM's expense, all members of the Settlement Class by first class United States mail, postage prepaid: (i) that the Court has given final approval to the Settlement; and (ii) explaining the procedure and providing Proof of Claim forms for Settlement Class members to obtain Certificates. The form and content of this Notice shall be subject to court review and approval at the request of either General Motors' Counsel or Class Counsel;
(5) All members of the Settlement Class who did not duly request exclusion from the Settlement Class in the time and manner provided in the Notice are hereby barred, permanently enjoined and restrained from commencing or prosecuting any action, suit, proceeding, claim, or cause of action in any jurisdiction or court against GM or any of the other entities or persons who are to be discharged as provided above, based upon, relating to, or arising out of, any of the matters which are discharged and released pursuant to the Settlement;
(6) The claims of Settlement Class members who elected to be excluded from the Settlement Class in the time and manner provided in the Notice are dismissed without prejudice;
(7) The collective request of the Barrett Group, the MDL group and the Texas Group for an award of $24 million in Class Counsel attorneys' fees is reasonable, adequately supported by the evidence of record, and is hereby GRANTED, which sum will be allocated between these three Class Counsel groups as set forth in the class notice;
*511 (8) With respect to requests for costs and expenses, as the upper limits for costs and expenses for the Barrett Group, the MDL Group and the Texas Group was not to exceed $600,000.00 each, which limitations were set forth in the notice, the request of the Barrett Group for costs and expenses in the amount of $582,378.99, the request of the MDL Group for costs and expenses in the amount of $600,000.00 and the request of the Texas Group for costs and expenses in the amount of $600,000.00, are hereby GRANTED, with the Court further granting leave to the Barrett Group to file supplemental Petitions, as necessary, for reimbursement of additional expenses incurred in connection with claims administration, with the aggregate of these administrative expenses not to exceed $300,000, as further contained in the class notice;
(9) The Court hereby awards $1.2 million to the Former MDL Objectors, which group includes various objectors to the prior settlement and certain intervenors in the consolidated federal court actions and Joseph A. White, III, et al. v. General Motors for attorneys' fees, costs and expenses. The Court orders that memoranda be filed within fourteen days from the date hereof regarding the allocation of the $1.2 million;
(10) The Court further awards to the Former Texas Objectors attorneys' fees in the amount of $875,000;
(11) If the Effective Date of settlement, as defined in the Settlement, does not occur for any reason whatsoever, this Final Order and Judgment shall be deemed vacated and shall have no force and effect whatsoever;
(12) In the event that this Court's final approval of the Settlement and Final Order and Judgment are reversed or set aside for any reason, this Final Order and Judgment and the certification of the Settlement Class and subclasses shall be vacated and the case returned to the Louisiana Court of Appeals for further proceedings on GM's appeal on the issues relating to venue and certification of the Louisiana litigation class; and
(13) Without affecting the finality of the Final Order and Judgment in any way, the Court reserves continuing and exclusive jurisdiction over the parties, including all members of the Settlement Class as defined above, and the execution, consummation, administration, and enforcement of the terms of the Settlement.
There being no just reason for delay, the Clerk is directed to enter this Final Order and Judgment forthwith.
THUS DONE AND SIGNED this 19th day of December, 1996, in Plaquemine, Louisiana.
 /s/ Jack T. Marionneaux
 JUDGE JACK T. MARIONNEAUX
NOTES
[*] Lottinger, C.J., retired on July 15, 1998, and thus did not consider this rehearing.
[1] Both Shelby Cedotal and Wilbert Cole were alleged to be residents of Iberville Parish.
[2] There was a hearing held in conjunction with the judgments rendered on May 17, 1993. The transcript is in the record lodged in 93 CA 1319.
[3] The class action pending in the Eighteenth Judicial District Court was not one of the matters removed to federal court.
[4] This case is still pending under docket number 93 CA 1319.
[5] The fifth amending and supplemental petition named original plaintiffs Joseph A. White, III, Shelby Cedotal d/b/a Cedotal Farms, and Wilbert Cole. Added as plaintiffs by this petition were Keith Landry, a resident of the Parish of Calcasieu, State of Louisiana; the Town of Grifton, Pitt County, State of North Carolina; King Landscaping & Sod of SW Florida, located in Lee County, State of Florida; and Jack White, a resident of Floyd County, State of Georgia.
[6] The MDL plaintiffs are approximately 200 individuals who reside primarily in California, Oregon, and Washington.
[7] Appointed as Class Counsel were Don Barrett, Lead Class Counsel, and Patrick W. Pendley and those firms and individuals designated as their Co-Class Counsel; Dianne M. Nast and Elizabeth J. Cabraser and those firms and individuals designated as their Co-Class Counsel; and Timothy J. Crowley and Sam F. Baxter and those firms and individuals designated as their Co-Class Counsel.
[8] Because each list of objectors is lengthy, we will refer to each group by the last name of the first objector listed. Additionally, the record reflects that only Hight's motion to intervene was granted, although there is no motion/petition in the record before us. The trial court did not act upon the remaining objectors' motions and/or petitions to intervene.
[9] The trial court did set forth findings to justify its approval of the settlement as fair, reasonable and adequate based on several factors.
[10] The Agreement of Settlement was not incorporated in nor attached to the Final Order and Judgment.
[11] The record indicates to this court that the second judgment rendered by the court clearly constituted a substantive alteration of the original judgment in contravention of La.C.C.P. art. 1951. Villaume v. Villaume, 363 So.2d 448, 450 (La.1978). La.C.C.P. art. 1951 provides that a final judgment may be amended by the trial court at any time by its own motion or pursuant to the motion of any party, to alter the phraseology, but not the substance, of a judgment, or to correct errors in calculation. Preston Oil Company v. Transcontinental Gas Pipe Line Corporation, 594 So.2d 908, 911 (La.App. 1st Cir.1991). The proper vehicle for a substantive change in a judgment is a timely motion for new trial or a timely appeal. Villaume v. Villaume, 363 So.2d at 451. However, it has been recognized that, on its own motion and with consent of the parties, a trial court may amend a judgment substantively, thereby creating a new, final judgment. See Preston Oil Company v. Transcontinental Gas Pipe Line Corporation, 594 So.2d at 912; Villaume v. Villaume, 363 So.2d at 451. Neither party has complained about the amendment of the judgment on appeal.
[12] La.C.C.P. art. 592 provided as follows:

One or more members of a class, who will fairly insure the adequate representation of all members, may sue or be sued in a class action on behalf of all members.
[13] Federal Rule 23(d) provides as follows:

(d) Orders in Conduct of Actions. In the conduct of actions to which this rule applies, the court may make appropriate orders: (1) determining the course of proceedings or prescribing measures to prevent undue repetition or complication in the presentation of evidence or argument; (2) requiring, for the protection of the members of the class or otherwise for the fair conduct of the action, that notice be given in such manner as the court may direct to some or all of the members of any step in the action, or of the proposed extent of the judgment, or of the opportunity of members to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or otherwise to come into the action; (3) imposing conditions on the representative parties or on intervenors; (4) requiring that the pleadings be amended to eliminate therefrom allegations as to representation of absent persons, and that the action proceed accordingly; (5) dealing with similar procedural matters. The orders may be combined with an order under Rule 16, and may be altered or amended as may be desirable from time to time.
[14] In 1997, the Legislature, through Acts 1997, No. 839, § 1 amended La.C.C.P. arts. 591-594, 596 and 611; enacted articles 612-617, and repealed article 593.1. The provisions of this Act are applicable only to actions filed on and after its effective date of July 1, 1997.
[15] We note here that In re: Asbestos Litigation, 90 F.3d 963 (5th Cir.), has been abrogated by the decision in Amchem Products, Inc. v. Windsor.
[16] The trial court also made no findings before it conditionally certified the nationwide class on July 2, 1996, the same day the motion for preliminary certification was filed.
[17] There is an exhibit which sets forth a review of the laws of all 50 states on a specific issue involving the claim for breach of warranty; however, there is no discussion on the causes of action for negligence or negligent misrepresentation/omission.